**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-23372-CIV-HUCK/O'SULLIVAN**

**TIE QIAN**

**Plaintiff,**

**v.**

**ERIC K. SHINSEKI, Secretary,**
**DEPARTMENT OF VETERANS AFFAIRS,**

**Defendant.**

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant, Eric K. Shinseki, Secretary Department of Veterans Affairs, by and through the undersigned Assistant United States Attorney, hereby files his motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. As grounds, therefor, the defendant submits the following:

## STATEMENT OF UNCONTROVERTED FACTS

1. The Plaintiff , Dr. Tie Qian, commenced his employment at the Department of Veterans Affairs, Miami, on July 1, 2001 as a physician with an excepted appointment in the Spinal Cord Injury Service (Exhs. 2, 3). An excepted appointment is a special hiring authority which allows agencies to use a streamlined hiring process rather than hiring through the traditional competitive process (Ex. 2). This allows agencies to help meet an unusual or special hiring need or to hire in highly needed or hard-to-recruit positions, like physicians (Id.).

2. Plaintiff was employed in a temporary appointment status throughout his term at the Department of Veterans Affairs under 38 U.S.C. Section 7405 (A) (1). On July 1, 2001, plaintiff was employed for a term not to exceed June 30, 2004. Thereafter, on June 30, 2004, his employment was extended for a term not to exceed June 30, 2005. On June 30, 2005, plaintiff's employment was extended for a term not to exceed June 30, 2006. On June 30, 2006, plaintiff's employment was extended for a term not to exceed June 30, 2009 (Exh. 2). 3. The Department of Veterans Affairs employs individuals in a temporary status in response to the temporary needs of the service. At no time was plaintiff a permanent employee at the Department of Veterans Affairs. A temporary employee serves at the pleasure of the Director of the Department of Veterans Affairs facility, and may be terminated at any time. A temporary employee has no entitlement to be converted to a permanent appointment (Exh. 2).

3. Consistent with 38 U.S.C. Section 7405 (A)(1), the Department of Veterans Affairs Handbook 5021 Part VI, 15 ¶¶ a and c provide that review of an involuntary separation does not apply to a temporary employee (Exhs 2, 4). Accordingly, by Memorandum dated September 14, 2007, Larry Brinkman, Chief, Human Resources Management Service, advised plaintiff that his employment was terminated effective September 28, 2007, based upon the results of a Management Review Team that concluded that he engaged in a pattern of unacceptable clinical practice and professional conduct not remedied despite repeated episodes of formal counseling (Exhs.2, 12).

4. On May 9, 2007, Alberto Martinez-Arizala, plaintiff's direct supervisor, issued a written letter of counseling about plaintiff's continuation of inappropriate copying and pasting of notes in the Computerized Patient Record System (CPRS) which according to Hospital policy constitutes plagiarism in the medical records. Dr. Martinez-Arizala noted that this was a follow-up

to his April 11, 2007 discussion with plaintiff on the same issues (Exhs. 5, 6). Dr. Martinez-Arizala explained the need for plaintiff to address and resolve his conduct in accordance with the Veterans Health Administration rules and regulations. Dr. Martinez-Arizala advised plaintiff that his progress would be monitored with monthly chart review audits (Id.).

5. Thereafter, on June 1, 2007, John R. Vara, M.D., Chief of Staff and Paul D. Magalian, Acting Director, Department of Veterans Affairs, Medical Center, wrote a letter to plaintiff notifying him that a Special Professional Standards Board was being appointed to complete an administrative review as prescribed in VHA Handbook 1100.19 and Medical Staff Bylaws of the Miami VA Healthcare System regarding questions about his clinical competence, including but not limited to inappropriate cutting and pasting of patient medical notes in the Computerized Patient Record System (Exhs. 5, 7).

6. On August 2, 2007, a Management Review Board was convened, comprised of Dr. Ronald Tolchin, Chair, and Heather Sered, M.D., and Kresimir Banovac, M.D. (Exh. 5). After considering a complement of cases presented for the Board's review, the Management Review Board recommended that an official administrative investigative board (AIB) be convened to evaluate plaintiff's deviations in the standard of care and conduct at the VA Medical Center (Exhs. 5, 8). The Management Review Board recommended that interviews of staff be conducted to further investigate plaintiff's time and attendance, availability to other staff and patients and documented in legal format for presentation to the Director (Exhs. 5, 8).

7. On August 16, 2007, Dr. Vara wrote a letter to plaintiff notifying him that his clinical privileges were going to be suspended immediately based on the potential substandard quality of care regarding his clinical competence, including but not limited to inappropriate copying and

pasting of patient medical notes in the patient record system; failure to appropriately document interdisciplinary team medical notes; failure to follow-up on patient's abnormal laboratory values and findings of possible falsification of the medical record (Exhs. 5, 9).

8. On September 6, 2007 a second Professional Standards Board was chartered, with Brian Hagenlocker, M.D. as Chair, to conduct a comprehensive review of the clinical practice and professional conduct of plaintiff for the purposes of potentially reducing or revoking privileges (Exhs. 5, 10). The Board concluded that plaintiff demonstrated a sustained pattern of unacceptable clinical practice and professional conduct that was not remedied despite repeated episodes of formal counseling (Id.). The Board added that this pattern of clinical practice and professional conduct poses an unacceptable risk to patients and represents a significant deviation from standard professional practice (Exh. 10). Following its studied review, the Board recommended that a Management Review Team take action to revoke plaintiff's medical staff appointment and clinical privileges (Exhs. 5, 10).

9. On September 14, 2007, Paul Magalian, Acting Director, Veterans Medical Center, Miami, wrote a Memorandum to plaintiff notifying him that his clinical privileges were revoked effective immediately based upon the findings of the Management Review Team (Exhs. 5, 11). Magalian explained that the Management Review Team concluded that plaintiff demonstrated a pattern of unacceptable clinical practice and professional conduct that was not remedied despite repeated episodes of formal counseling (Exh. 11). Also, on September 14, 2007, Larry Brinkman, Chief, Human Resources Management Service, wrote a Memorandum to plaintiff notifying him that his appointment as a physician at the Veterans Affairs was terminated effective September 28, 2007

(Exh. 12). Accordingly, Brinkman explained that with the termination of his appointment, so too were his clinical privileges revoked (Exh. 12).

10. On February 22, 2008, a Review Panel for the Termination of Privilege of plaintiff held a hearing, during which time plaintiff appeared with counsel and discussed each of the allegations evaluated by the Special Professional Standards Board/Management Review (Exh. 5, 13). On April 7, 2008, the Review Panel, chaired by Angel Colon-Molero, M.D, M.B.A. with Rafael Mascarinas, M.D., and Medha Sharma, M.D. issued its report advising that it unanimously concluded that the evidence justifies the revocation of plaintiff's privileges at the Veterans Affairs Medical Center (Exh. 13).

11. In an undated letter posted on or about April 15, 2008, Mary D. Berrocal, Medical Center Director advised plaintiff that following the Review Panel hearing on February 22, 2008 and the Panel's findings, he will reported to the National Practitioner Data Bank (NPDB) (Exhs 5, 14). In a letter dated May 13, 2008, Nevin Weavor, Network Director, advised plaintiff that he concurred with the revocation of his VA Medical Center privileges and that this decision constitutes the final decision which is not subject to further appeal (Exh. 15).

12. On July 1, 2008, the Veterans Affairs Medical Center reported plaintiff's revocation of clinical privileges to the National Practitioner Data Bank (Exh. 5).

## ARGUMENT

1. The plaintiff has no evidence to establish discrimination under Title VII

In his complaint, the plaintiff asserts that his action is filed under the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-. Hulsey v. Pride Restaurants, LLC , 367 F.3d 1238, 1244 (11th Cir. 2004). Throughout his complaint, however, the plaintiff does not assert a violation of discrimination as provided for in Title VII.

Rather, the plaintiff steadfastly alleges that the defendant did not follow its procedures prior to terminating plaintiff's employment and revoking his clinical privileges. Indeed, during his deposition on June 17, 2010, plaintiff confirmed that his action is based upon purported procedural violations when the defendant allegedly failed to follow its bylaws and regulations, not because of discrimination (Excerpts of plaintiff's depo, Exh. 1, pp. 55-56). The plaintiff stated that he has no proof or evidence that he was terminated because he was Chinese, only that the defendant failed to follow proper procedures (Pltf. Depo., Exh. 1, 62 - 64).

Title VII does not provide for redress of procedural due process, however. By his own admission, the plaintiff has no evidence to establish a case of unlawful discrimination under Title VII. Plaintiff's claim of discrimination under Title VII must be dismissed.

2. Plaintiff was not denied due process

Plaintiff alleges at various places in his complaint that he was denied a hearing prior to his termination by the Veterans Administration, and the revocation of his hospital privileges at the VA Hospital in Miami. His claim appears to be one alleging a denial of procedural due process.

"The necessary first step in evaluating any procedural due process claim is determining whether a constitutionally protected interest has been implicated." Tefel v. Reno, 180 F.3d 1286, 1299 (11th Cir. 1999), citing Economic Dev. Corp. v. Stierheim, 782 F.2d 952, 954-55 (11th Cir. 1986)("In assessing a claim based on an alleged denial of procedural due process a court must first

decide whether the complaining party has been deprived of a constitutionally protected liberty or property interest. Absent such a deprivation, there can be no denial of due process.").

To prevail on a procedural due process claim, plaintiff must establish: (1) a constitutionally protected interest in life, liberty or property; (2) governmental deprivation of that interest; and (3) the constitutional inadequacy of procedures accompanying the deprivation. Bank of Jackson County v. Cherry, 980 F.2d 1362, 1366 (11th Cir. 1993)(citations omitted).

A. Plaintiff was an employee at will at the VA, with no property interest in his employment

Plaintiff was hired by the defendant in July, 2001 as a temporary employee. His employment was renewed on three occasions. Under the employment arrangement with the VA, plaintiff could be terminated at any time, for any reason. Consequently, he was an employee at will with the VA. An at-will employee has no property interest in his job. In Davis v. Mobile Consortium of CETA, 857 F.2d 737, 741 (11th Cir. 1988), the Eleventh Circuit observed that, "[a]s employees subject to discharge at will, CETA [Comprehensive Employment and Training Act] participants had no property interest in their jobs." See also Blanton v. Griel, 758 F.2d 1540, 1543 (11th Cir. 1985)("a state employee who may be discharged at will under state law does not have a property interest in his continued employment and is not entitled to the protection of due process").

B. Plaintiff has a protected property interest in his medical staff privileges

In El Shahawy v. Harrison, 875 F.2d 1529 (11th Cir. 1989), the Court of Appeals held that a physician has a constitutionally protected property interest in continuation of his medical staff privileges, where the medical staff's bylaws detail an extensive procedure to be followed when corrective action against a medical staff physician is warranted. Id. at 1532(citations omitted). The Miami VA Healthcare System Medical Staff By-laws arguably have a procedure that may be

deemed to afford a physician with a property interest in his staff privileges (Excerpts of VA Medical Staff Bylaws, Exh. 16). The Bylaws, Attachment B, Part V. provides the procedure for a reduction or revocation of privileges (Exh. 16).

Although the plaintiff may have had a property interest in his medical privileges at the VA, the VA provided procedural due process protections that were adequate under the Constitution. Because plaintiff had no property interest in his continued employment at the VA, he cannot state a claim of a denial of procedural due process with regard to his termination. However, he did have a protected property interest in his medical staff privileges at the VA Hospital. Therefore, the issue is whether the procedural due process accorded plaintiff for the termination of his medical staff privileges, were constitutionally adequate.

In McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994)(en banc), the Eleventh Circuit noted that substantive due process rights differ from their procedural counterparts in a number of ways. Id. at 1556-57. One way is the manner in which a violation occurs. A violation of a substantive due process right is complete when it occurs. Because the right is "fundamental," no amount of process can justify its infringement. Id. at 1557(citation omitted). In contrast, a procedural due process violation is not complete "unless and until the State fails to provide due process." Id., citing Zinermon v. Burch, 494 U.S. 113, 123 (1990). Continuing, the appellate court observed, "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." 20 F.3d at 1557.

In the instant case, it is undisputed that the VA accorded plaintiff a hearing on February 22, 2008, during which time plaintiff appeared with counsel to present his argument and evidence in

opposition to revocation of his privileges. The VA provided a process sufficient to afford plaintiff his procedural due process rights. While the hearing occurred after the termination of his medical staff privileges, since the VA did not refuse to provide a process sufficient to remedy any procedural deprivation, there is no procedural due process violation. No evidence exists to establish that an additional hearing would result in a different ruling. "Procedural due process does not guarantee a particular result." Schiavo ex rel Schindler v. Schiavo, 403 F.3d 1289, 1295 (11th Cir. 2005).

The Medical Staff Bylaws, Section V, Part 1, subsections c and f (upon which plaintiff primarily relies) provides a hearing for consideration of a reduction and revocation of a privileges (Exh. 16). Of overriding importance in the Medical Staff Bylaws, however, is Section V, Part 2, subsection b, which provides " Dismissal constitutes a revocation of privileges, whether or not there was a separate and distinct privileging action , and will be reported without further review or due process to the NPDB. Section V, Part 2, subsection c provides that "[w]hen revocation of privileges is proposed and not combined with a proposed demotion or dismissal, the due process procedures under reduction of privileges will pertain." It follows, however, that Section V, Part 2, subsection c would also provide that when revocation of privileges is combined with a proposed dismissal, the due process procedures under revocation/reduction of privileges will not apply. The Medical Staff Bylaws are, therefor, consistent with the law defining employment at will, and the analysis of any property interest in medical privileges.

## CONCLUSION

Based upon the foregoing, the Court should enter summary judgment for defendant in plaintiff's Title VII discrimination claim; and should dismiss plaintiff's procedural due process claim as to his employment, for failure to state a claim. Summary judgment should be entered for defendant on plaintiff's procedural due process claim regarding the revocation of his medical privileges because the procedural due process afforded plaintiff was constitutionally adequate.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: s/Karin D.Wherry

KARIN D. WHERRY
(Florida Bar No. 509530)
Assistant United States Attorney
Karin.Wherry@usdoj.gov
United States Attorney's Office
99 NE 4th Avenue, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9016
Facsimile: (305) 530-7139

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Karin D. Wherry*
KARIN D. WHERRY
Assistant United States Attorney

**SERVICE LIST**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-23372-CIV-HUCK/O'SULLIVAN**

Tie Qian
2516 Montclaire Cir.
Weston, Florida 33327
Pro-Se Plaintiff

Karin D. Wherry
Assistant United States Attorney
E-Mail: Karin.Wherry@usdoj.gov
United States Attorney's Office
99 NE 4th Avenue, Suite 300
Miami, Florida 33132
Florida Bar No. 509530
Telephone: (305) 961-9016
Facsimile: (305) 530-7139
Attorney for Defendant