# EXHIBIT D

**Department of Veterans Affairs**                      **VHA Handbook 1100.19**
**Veterans Health Administration**                      **Transmittal Sheet**
**Washington, DC  20420**                               **March 6, 2001**

## CREDENTIALING AND PRIVILEGING

**1.  REASON FOR ISSUE:**  This revised Veterans Health Administration (VHA) Handbook provides VHA procedures regarding credentialing and privileging.

**2.  SUMMARY OF CONTENTS/MAJOR CHANGES**

    a.  Changes have been made to provide new requirements for licensure verification procedures.

    b.  Changes have been made to a *NOTE* concerning information on requirements for board certification as a function of employment to come into compliance with VHA policy on Board Certification.

    c.  Changes have been made to clarify the requirements for the processing of National Practitioner Data Bank (NPDB) queries by a gaining facility when a practitioner transfers between facilities.

    d.  Other non-substantive changes have been made to clarify the responsible office and the Privacy Act System of Records Notice.

**3.  RELATED DIRECTIVE:**  VHA Directive 1100, to be published.

**4.  RESPONSIBLE OFFICE:**  The Office of Quality Performance (10Q), is responsible for the contents of this VHA Handbook.

**5.  DOCUMENTS RESCINDED:**  VHA Handbook 1100.19, dated March 4, 1999, is rescinded.

**6.  RECERTIFICATION:**  This document is scheduled for recertification on or before the last day of March 2006.

**6.  RECERTIFICATION:**  This document is scheduled for recertification on or before the last day of March 2006.


                              S/ Tom Sanders for
                              Thomas L. Garthwaite, M.D.
                              Under Secretary for Health


DISTRIBUTION:  CO:        E-mailed 3/7/2001
               FLD:       VISN, MA, DO, OC, OCRO, and 200 – E-mailed  3/7/2001

**March 6, 2001**                                          **VHA HANDBOOK 1100.19**

## CONTENTS

## CREDENTIALING AND PRIVILEGING

**PARAGRAPH**                                                            **PAGE**

1. Scope ........................................................................................................... 1

2. Responsibilities ............................................................................................ 1

3. References .................................................................................................... 2

4. Definitions ................................................................................................... 3

5. Credentialing ............................................................................................... 4

    a. Provisions ............................................................................................... 4
    b. Procedures .............................................................................................. 4
    c. Application Forms ................................................................................... 4
    d. Documentation Requirements ................................................................. 4
    e. Educational Credentials .......................................................................... 5
    f. Verifying Specialty Certification ............................................................ 6
    g. Licensure ................................................................................................ 7
    h. DEA Certification ................................................................................... 8
    i. Employment Histories and Pre-employment References ........................ 9
    j. Health Status ......................................................................................... 10
    k. Malpractice Considerations .................................................................. 10
    l. NPDB Screening ................................................................................... 11
    m. Appointment and Termination of Title 5 and Title 38 Staff Relative to
        NPDB Screening ............................................................................. 12
    n. Transfer of Credentials ……………………….............………………………14
    o. Disposition of Credentialing and Privileging Files ............................... 14
    p. Reappraisal ........................................................................................... 15
    q. Temporary Appointments in Emergency Situations .............................. 15

6. Privileging ................................................................................................... 15

    a. Provisions ............................................................................................. 15
    b. Review of Clinical Privileges ............................................................... 16
    c. Procedures ............................................................................................ 16
    d. Initial privileges ................................................................................... 17
    e. Temporary Privileges in Emergency Situations .................................... 18
    f. Reappraisal and Reprivileging .............................................................. 19
    g. Reduction and Revocation of Privileges .............................................. 20

**APPENDIX**

A  Format of Standard (six-part) Credentialing and Privileging Folder ................................. A-1
B  Credentials Transfer Brief Format ……………………….............…………………… B-1

i

**March 6, 2001**                                            **VHA HANDBOOK 1100.19**

## CREDENTIALING AND PRIVILEGING

## 1. SCOPE

a. All Veterans Health Administration (VHA) individuals who are permitted by law and the facility to provide patient care services independently will be credentialed and privileged as defined in this Handbook. The requirements of the Joint Commission on Accreditation of Healthcare Organizations (JCAHO) standards and the VHA policies have been used to define the credentialing, privileging, reappraisal, and reprivileging processes. This Handbook applies to all VHA licensed independent practitioners permitted by law and facility to provide direct patient care, and who are appointed or utilized on a full-time, part-time, intermittent, consultant, attending, without compensation (WOC), on-station fee-basis, on-station contract, or on-station sharing agreement basis. Policy and procedures related to the reduction and revocation of clinical privileges apply to all individuals who are granted privileges within the scope of this handbook.

b. Documentation of the requirements in this Handbook may be maintained in a paper or electronic medium. The requirements of this policy are the same whether carried out on paper or electronically. For example, if a signature is required and the mechanism in use is electronic, then that modality must provide for an electronic signature.

c. Credentialing and Privileging must be completed prior to initial appointment or reappointment and before transfer from another medical facility. If the primary source verification(s) of the practitioner's credentials are on file (paper or electronic database), those credentials that were verified at the time of initial appointment (and are not specifically required by this policy, or JCAHO, to be updated or reverified) can be considered verified.

d. All procedures described in this Handbook will be applicable to Chiefs of Staff and facility Directors who are involved in patient care. Differences in specific procedures will be noted where applicable.

e. This policy applies to licensed health care personnel in VHA Headquarters, Veterans Integrated System Network (VISN) offices, and other organizational components. Wherever the policy defines an action or responsibility of the medical facility Director, or designee, that role belongs to the head of that organizational component, or designee.

*NOTE:  This Handbook does not apply to residents, except those who function outside the scope of their training program; i.e., as Admitting Officer of the Day.*

## 2. RESPONSIBILITIES

a. **The Under Secretary for Health.**  The Under Secretary for Health, or designee, is responsible for the development and issuance of the VHA credentialing and privileging policy.

b. **The Assistant Deputy Under Secretary for Health (10N).**  The Assistant Deputy Under Secretary for Health (10N), is responsible for ensuring that Network Directors maintain an appropriate Credentialing and Privileging process consistent with the VHA policy. In doing so, uniform prototype performance standards will be issued for key VHA medical facility managers,

1

such as Directors, Associate and/or Assistant Directors, Human Resource Management Officers, and Chiefs of Staff (COS).  Monitoring of credentialing and privileging will continue through periodic JCAHO consultative site visits and other reviews, as applicable.

    c.  **The Facility Director.**  The ultimate responsibility for credentialing and privileging resides with the facility Director.

    d.  **The Facility COS.**  The facility COS is responsible for maintenance of the Credentialing and Privileging system and will ensure that all individuals applying for clinical privileges are provided with a copy of, and agree to abide by the Medical Staff Bylaws, Rules, and Regulations.

    e.  **Service Chiefs.**  Service chiefs are responsible for reviewing all credentials and requested clinical privileges and for making recommendations regarding appointment and privileging action.

    f.  **The Chief, Policy and Planning Office.**  The Chief, Policy and Planning Office (105), is responsible for evaluating progress towards the implementation of recommendations made by external reviewers, such as Office of Inspector General (OIG) and General Accounting Office (GAO).

    g.  **Applicant and Employee Responsibilities**.  Applicants and employees must provide evidence of licensure, registration, certification, and/or other relevant credentials, for verification prior to appointment and throughout the employment process, as requested.  They must agree to accept the professional obligations delineated in the Medical Staff Bylaws, Rules, and Regulations provided to them.  They are responsible for keeping the Department of Veterans Affairs (VA) apprised of anything that would adversely affect or otherwise limit their clinical privileges.  ***NOTE:***  *Failure to keep VA fully informed on these matters may result in administrative or disciplinary action.*

    h.  **Local Facilities.**  Local facilities must meet their labor-management obligations prior to implementing a Credentialing and Privileging Program that involves Title 5 independent practitioners who are represented by a professional bargaining unit.

**3.  REFERENCES**

    a.  Title 38 United States Code (U.S.C.) 7401(1)(2)(3), 7402, 7405, 7409, and 7461 through 7464.

    b.  Title 45 Code of Federal Regulations (CFR) Part 60.

    c.  Public Laws (Pub. L.) 99-166 and 99-660 and its revisions.

    d.  Pub. L. 100-177.

    e.  Federal Personnel Manual (FPM) chapter 315 Subchapter 8, and FPM Chapters 731 and 754.

   f.  MP-5, Part II, Chapters 2, 4, 8, and 9 and the respective VHA Supplements.

   g.  Joint Commission on Accreditation of Healthcare Organizations, <u>Accreditation Manual for Hospitals</u>.

   h.  Privacy Act System of Records Notice for Healthcare Provider Records (77VA10Q).

## 4.  DEFINITIONS

   a.  **<u>Credentialing.</u>**  The term credentialing refers to the systematic process of screening and evaluating qualifications and other credentials, including licensure, required education, relevant training and experience, current competence and health status.

   b.  **<u>Licensure.</u>**  The term licensure refers to the official or legal permission to practice in an occupation, as evidenced by documentation issued by a State in the form of a license or registration.

   c.  **<u>Clinical Privileging.</u>**  The term clinical privileging is defined as the process by which a practitioner, licensed for independent practice (i.e., without supervision, direction, required sponsor, preceptor, mandatory collaboration, etc.) is permitted by law and the facility to practice independently, to provide medical or other patient care services within the scope of the individual's license, based on the individual's clinical competence as determined by peer references, professional experience, health status, education, training, and licensure.  Clinical privileges must be facility specific and provider specific.  ***NOTE:  There may be practitioners, who by the nature of their position, are not involved in patient care (i.e., researchers or administrative physicians).  These individuals will be credentialed, but may not need to be privileged.***

   d.  **<u>Independent Practitioner.</u>**  The term independent practitioner is any individual permitted by law (the statute which defines the terms and conditions of the practitioner's license) and the facility to provide patient care services independently; i.e., without supervision or direction, within the scope of the individual's license and in accordance with individually granted clinical privileges.  ***NOTE***: *Only licensed independent practitioners may be granted clinical privileges.*

   e.  **<u>Certified Copy.</u>**  The term certified copy means that each and every page of the document in question is stamped "certified copy of original," dated and signed by the person doing the certification.

   f.  **<u>One Standard of Care.</u>**  The term one standard of care means that one standard of care must be guaranteed for any given treatment or procedure regardless of the practitioner, service, or location within the facility.  In the context of credentialing and privileging, the requirements or standards for granting privileges to perform any given procedure, if performed by more than one service, must be the same.

   g.  **<u>PG.</u>**  The term PG means post-graduate.

**VHA HANDBOOK 1100.19**                                                    **March 6, 2001**

5.  **CREDENTIALING (i.e., the Initial Appointment or Reappointment after a Break in Service)**

a.  **Provisions.**  Individuals must be fully credentialed and privileged prior to initial appointment or reappointment, except as identified in subparagraphs entitled "Temporary Appointments in Emergency Situations."

b.  **Procedures.**  Credentialing is required to ensure an applicant has the required education, training, experience, physical and mental health, and skill to fulfill the requirements of the position and to support the requested clinical privileges.  This section contains the administrative requirements and procedures related to the initial credentialing of practitioners who plan to apply for clinical privileges.

(1)  The credentialing process includes verification, through the appropriate primary sources, of the individual's professional education; training; licensure; certification and review of health status; previous experience, including any gaps (greater than 30 days) in training and employment; clinical privileges; professional references; malpractice history and adverse actions; or criminal violations, as appropriate.  Employment commitments shall not be made until the credentialing process is completed, including screening through the appropriate State Licensing Board (SLB) and the National Practitioner Data Bank (NPDB).  All information obtained through the credentialing process will be carefully considered before employment and privileging decision actions are made.

(2)  The applicable service chief will review the credentialing folder and requested privileges and make recommendations regarding appointment.  The folder and recommendations will be reviewed by the credentialing committee and then submitted with recommendations to the medical staff's Executive Committee.

(3)  All applicants applying for clinical privileges will be provided with a copy of the Medical Staff Bylaws, Rules, and Regulations and must agree in writing to accept the professional obligations reflected therein.

c.  **Application Forms**.  Candidates seeking appointment must complete appropriate forms for the position for which they are applying.  In addition, a form with information supplemental to VA application forms may be used to address questions JCAHO and the VHA require during the credentialing and privileging process.  Any supplemental form(s) will also address the applicant's agreement to accept the professional obligations defined in the Medical Staff Bylaws, Rules, and Regulations.  Applicants are required to provide information on all educational, training, and employment experiences, including all gaps greater than 30 days in the candidate's history.  ***NOTE:*** *A copy of the appropriate application form and any supplemental form(s) are filed in Section I of the credentialing and privileging folder.  If the applicant provides a resume or curriculum vitae, this is also filed in Section I.*

d.  **Documentation Requirements**

(1)  Each privileged health care practitioner will have a Credentialing and Privileging file established and maintained according to the requirements of the standardized folder identified in

**4**

Appendix A.  Other licensed health care providers may have a credentials file maintained in the same system of records even though they may not be granted clinical privileges.

(2)  Information obtained, to be used in the credentialing process, must be primary source verified (unless otherwise noted) and documented in writing, either by letter or report of contact. Facilities are expected to secure all credentialing and privileging documents.

*NOTE: If the search for documents is unsuccessful or primary source documents are not received, after a minimum of two requests, full written documentation of these efforts, in the form of a report of contact, will be placed in the folder in lieu of the document sought.  It is suggested that no more than 30 days elapse before the attempt is deemed unsuccessful.  It is further recommended that the practitioner be notified and involved in the attempt to obtain the necessary documentation.*

*NOTE: There are circumstances when verification from a foreign country is not possible or could prove harmful to the practitioner and/or family.  In these instances, full documentation of efforts and circumstances, including a statement of justification, should be made in the form of a report of contact and filed in the Credentialing and Privileging file in lieu of the document sought.*

e.  **Educational Credentials**

(1)  **Verification of Educational Credentials**

(a)  For individuals who are requesting clinical privileges, written verification of <u>all</u> residencies, fellowships, advanced education, clinical practice programs, etc., from the appropriate program director or school is required.  If a physician or dentist participated in an internship(s) equivalent to the current residency years PG 1, 2, and 3, it will be necessary to obtain primary source verification of the internship(s).  Any fees charged by institutions to verify education credentials will be paid by the facility.

(b)  For foreign medical school graduates, facility officials must verify with the Educational Commission for Foreign Medical Graduates (ECFMG) that the applicant has met requirements for certification.  The ECFMG is not applicable for graduates from Canadian or Puerto Rican medical schools.  Documentation of completion of a "Fifth Pathway" may be substituted for ECFMG certification.  Additionally, JCAHO accepts the primary source verification of ECFMG for foreign medical school graduation.  Documentation of this verification will meet the requirements of this policy.

(c)  If education cannot be verified because the school has been closed, because the school is in a foreign country and no response can be obtained, or for other reasons, all efforts to verify the applicant's education will be documented.  In any case, facility officials must verify and document that candidates meet appropriate VA qualification standard educational requirements prior to appointment.

(d)  Applicants are required to provide information on all educational and training experiences including all gaps greater than 30 days in educational history.  Primary source verification will

be sought on medical, dental, professional school graduation, and all residency(ies) and fellowship(s) training, as well as internships for non-physician, non-dentist applicants.

(e)  For other health care providers, at a minimum, the level of education that permits licensure should be verified, as well as all other advanced education used to support the granting of clinical privileges, if applicable.

(f)  Primary source verification of other advanced educational and clinical practice program is required if the applicant offers this credential(s) as a primary support for requested specialized clinical privileges.

(2)  **Educational Profile for Physicians.**  Facilities may obtain, from the American Medical Association (AMA), a profile listing all medical education a physician candidate has received in this country and the available licensure information for follow-up as necessary.  The AMA Physician Profile meets JCAHO primary source verification requirements for physicians' and osteopaths' education, training, and board certification.  In instances where the AMA Profile does not stipulate primary source verification was obtained, the facility must pursue that verification if required by this policy.  If a VA facility elects to use the profile, any associated fee will be borne by the facility.  Nothing in this Handbook regarding the AMA Physician Profile alters Human Resources Management's documentation requirements for employment.

(3)  **Filing.**  Verification of all education and training is filed in Section III of the Credentialing and Privileging Folder.

f.  <u>**Verifying Specialty Certification**</u>

(1)  **Physician and/or Dentist Service Chiefs**

(a)  Physician and/or dentist service chiefs will be certified by an appropriate specialty board. For candidates not board-certified, or board certified in a specialty(ies) not appropriate for the assignment, the medical staff's Executive Committee affirmatively establishes and documents, through the privilege delineation process, that the person possess comparable competence.  If the service chief is not board certified, the Credentialing and Privileging file must contain documentation that the individual has been determined to be equally qualified based on experience and the hospital's quality improvement data.  Appointment of service chiefs without board certification will comply with the VHA policy for these appointments as appropriate.

(b)  Verification must be from the primary source by direct contact or other means of communication with the primary source, such as by the use of a public listing of specialists in a book or Web site, or other electronic medium as long as the listing is maintained by the primary source and there is no disclaimer regarding authenticity.  If listings of specialists are used to verify specialty certification, they must be from recently issued copies of the publication(s), with a certified copy of the cover page indicating publication date and a certified copy of the page listing the practitioner.  This information must be included in the practitioner's folder as follows:

(2)  **Physicians**.  Board certification may be verified through the <u>Compendium of Medical Specialists</u>, published by the American Board of Medical Specialists, or the <u>Directory of American Medical Specialists</u>, published by Marquis' Who's Who, or by direct communication with officials of the appropriate board.  A letter from the board addressed to the facility is

**6**

acceptable for those recently certified.  ***NOTE:  The address and telephone number of the board may be obtained from the latest Directory of Approved Residency Programs published by the Accreditation Council for Graduate Medical Education.***  Copies of documents used to verify certification are to be filed in the Official Personnel Folder and, in the credentialing and privileging file.  ***NOTE:  MP-5, Part II, Chapter 3, for procedures related to verifying board certification for special pay purposes.***

(3) **Dentists**.  Board certification may be verified by the listings in the <u>American Dental Directory</u>, published annually by the American Dental Association, or by contacting the appropriate Dental Specialty Board.  Addresses of these boards may be obtained from the American Dental Association, 211 East Chicago Avenue, Chicago, IL 60611.

(4) **Podiatrists**.  Three specialties are currently recognized by the House of Delegates, American Podiatric Medical Association and VA:  the American Board of Podiatric Surgery, American Board of Podiatric Orthopedics, and American Board of Podiatric Public Health. Addresses of these boards may be obtained from the latest <u>American Podiatric Directory</u>.

(5) **Other Occupations**.  Board certification and other specialty certificates will be primary source verified by contacting the appropriate board or certifying organization.

(6) **Evidence of Continuing Certification.**  Board certification and other specialty certificates which are time-limited or carry an expiration date, and are required by policy will be reviewed and documented prior to expiration.

(7) <u>Filing</u>.  Verification of specialty certification is filed in Section III of the Credentialing and Privileging folder.

g. <u>**Licensure**</u>

(1) **Requirement for Full, Active, Current, and Unrestricted Licensure**

(a)  Possession of Full, Active, Current, and Unrestricted License.  Applicants being credentialed in preparation for applying for clinical privileges must possess at least one full, active, current, and unrestricted license to be eligible for appointment.  ***NOTE:  For new appointments after a break in service, all licenses active at the time of separation need to be primary source verified for any change in status.***

(b)  As part of the credentialing process, the status of an applicant's licensure and that of any required or claimed certifications will be reviewed and primary source verified.   Except as provided in VHA Supplement, MP-5, Part II, Chapter 2, for VHA physicians and dentists and VHA Supplement MP-5, Part I, Appendix 338A, all independent licensed practitioners must have a full, active, current, and unrestricted license to practice in any State, Territory, or Commonwealth of the United States, or in the District of Columbia.

(c)  SLBs may restrict the license of a practitioner for a variety of reasons and suspend the licensee's ability to independently prescribe controlled substances or other drugs; selectively limit one's authority to prescribe a particular type or schedule of drugs; or accept one's offer or

voluntary agreement to limit authority to prescribe, or provide an "inactive" category of licensure.

   *NOTE:  In such cases, the license shall be considered restricted for VA purposes regardless of the official SLB status.*

   (2)  **Appointment of Candidates with Previous or Current Adverse Action Involving Licensure.**  Physicians and dentists, or other licensed practitioners who have had a license or licenses restricted, suspended, revoked, limited, issued and/or placed on probational status, voluntarily surrendered pending action or denied upon application, may be appointed under the appointment procedures that apply to other physicians and dentists or other health professionals. Officials included in the appointment process are to thoroughly review all SLB documentation (findings of fact detailing the basis for the action against the applicant's license, stipulation agreements, consent orders, and final orders), as well as the applicant's subsequent professional conduct and behavior before determining whether the applicant can successfully serve as a physician or dentist or other health care practitioner in VA.  If action was taken against the applicant's sole license, or against all the applicant's licenses, a review by the Chief, Human Resources Management Service, or the Regional Counsel, would be necessary to determine whether the applicant possesses a full and unrestricted license.  Documentation of this review will include the reason for the review, the rationale for conclusions reached, the recommended action, and will be filed in the Credentialing and Privileging folder.

   (3)  **Verification with SLB(s).**  Verification can be made through a letter or by telephone and documented on a report of contact.  Electronic means of verification are also acceptable as long as the site is maintained by the primary source and there is no disclaimer regarding authenticity. At the request of the COS, the facility Director may delegate responsibility for contacting SLBs. If the State is unwilling to provide primary source verification of licensure, the facility will document the State's refusal and secure a certified copy of the license from the applicant.  If the reason for the SLB's refusal is payment of a fee, the facility should pay the fee if the review is for initial appointment.

   (4)  **Filing.**  Verification of licensure and/or registration is filed in Section IV of the Credentialing and Privileging folder.

   h.  **DEA Certification**

   (1)  **Background.**  Physicians, dentists, and certain other professional practitioners may apply for and be granted renewable certification by the DEA, Federal and/or State, to prescribe controlled substances as part of their practice.  Certification by DEA is not required for VA employment, since employees may use the facility's institutional DEA certificate.  Certification will be verified for individuals who claim on the employment application form to currently hold or to have held DEA certification in the past.

   (2)  **Application.**  Each applicant possessing a DEA certificate will document on the appropriate VA employment application form, information about the current or most recent DEA certificate.  Any applicant whose DEA certification (Federal and/or State) has ever been revoked, suspended, limited, restricted in any way, or voluntarily or involuntarily relinquished, or not

renewed, will be required to furnish a written explanation at the time of filing the employment application and at the time of reappraisal.

(3) **Restricted Certificates.** A SLB may obtain a voluntary agreement from an individual not to apply for renewal of certification, or may decide to disapprove the individual's application for renewal as a part of the disciplinary action taken in connection with the individual's professional practice. While there are a number of reasons a license may be restricted which are unrelated to DEA certification, an individual's State license is considered restricted or impaired for purposes of VA employment if a SLB has:

(a) Suspended the person's authority to prescribe controlled substances or other drugs;

(b) Selectively limited the individual's authority to prescribe a particular type or schedule of drugs; or

(c) Accepted an individual's offer for voluntary agreement to limit authority to prescribe.

(4) **Verification.** A copy of the current DEA certification (Federal and/or State) will be signed prior to appointment and reappointment, and a certified copy of the DEA certificate will be maintained in Section IV of the Credentialing and Privileging File. A report of contact is required documenting the reasons for non-renewal of a previously held DEA certification. This documentation will be filed in Section IV of the standard folder.

　　*NOTE: For new appointments after a break in service, any DEA certification active at the time of separation must be verified, and any change in status documented.*

i. **Employment Histories and Pre-employment References.** For practitioners requesting clinical privileges, at least three references must be obtained including at least one from the current or most recent employer(s) or institution(s) where the applicant holds or held privileges.

(1) For any candidate whose most recent employment has been private practice, facility officials will contact institution(s) where clinical privileges are and/or were held, professional organizations, references listed on the application form, and/or other agencies, institutions or persons who would have reason to know the individual's professional qualifications.

(2) The VA Form Letter 10-341a, Appraisal of Applicant, may be used to obtain references. Additional information may be required to fully evaluate the educational background and/or prior experiences of an applicant. Initial and/or follow-up telephone or personal contact with those having knowledge of an applicant's qualifications and suitability are encouraged as a means of obtaining a complete understanding of the composite employment record. All references must be documented in writing. Written records of telephone or personal contacts must report who was spoken to, that person's position, the date of the contact, a summary of the information provided, and the reason why a telephone or personal contact was made in lieu of a written communication. Reports of contact are to be filed with other references in the Official Personnel Folder and in the Credentialing and Privileging file. For applicants requesting clinical privileges, the facility should send a minimum of two requests for verification of the practitioner's currently held or most recently held clinical privileges; that they are (or were) in good standing with no adverse actions or reductions for the specified period of time.

(3)  Ideally, references should be from authoritative sources, which may require that facility officials obtain information from sources other than the references listed by the applicant.  As appropriate to the occupation for which the applicant is being considered, references should contain specific information about the individual's scope of practice and level of performance. For example, information on:

(a)  The number and types of procedures performed, range of cases managed, appropriateness of care offered, outcomes of care provided, etc.

(b)  The applicant's clinical judgment and technical skills as reflected in results of quality improvement activities, peer review and/or references, as appropriate.

(c)  The applicant's health status in relation to proposed duties of the position and, if applicable, to clinical privileges being requested.

(4)  Employment information and references are filed in Section V of the Credentialing and Privileging folder.

j.  **Health Status**.  All applicants and employees, whether paid or appointed or have a new appointment after a break in service, or are on a WOC basis, who request clinical privileges, including those utilized on a full-time, part-time, or intermittent basis; as consultants or attendings; or on a fee-basis, and including those utilized on an on-station contract or on-station sharing agreement basis, will be required to certify a declaration of appropriate health status.

(1)  This declaration of health must be confirmed by a physician designated by or acceptable to the facility, such as the employee health physician or physician supervisor from the individual's previous employment.  Confirmation, at a minimum, should be in the form of a countersignature by the confirming physician.  ***NOTE:***  *Additional information may be sought from appropriate source(s), if warranted.*

(2)  All references will be solicited as to the applicant's physical and mental capability to fulfill the requirement of the clinical privileges being sought.

(3)  The documentation of health and relevant supporting information will be filed in Section V of the Credentialing and Privileging folder.

k.  **Malpractice Considerations**

(1)  **Applicants.**  VA application forms, or supplemental forms, require applicants to give detailed written explanations of any involvement in administrative, professional, or judicial proceedings, including Federal tort claims proceedings, in which malpractice is or was alleged. If an applicant has been involved in such proceedings, a full evaluation of the circumstances will be made by officials participating in the credentialing, selection, and approval processes prior to making any recommendation or decision on the candidate's suitability for VA employment.

(2)  **Employees.**  At the time of initial hire of a new appointment after a break in service, or reappraisal, each employee will be asked to list any involvement in administrative, professional

or judicial proceedings, including Tort claims, and to provide a written explanation of the circumstances, or change in status.  A review of clinical privileges, as appropriate, will be initiated if clinical competence issues are involved.  The information provided by the employee must be filed in Section VI of the Credentialing and Privileging folder.

(3)  **Primary Source Information.**  Efforts should be made to obtain primary source information regarding the issues involved and the fact of the cases.  The Credentialing and Privileging folder will contain an explanatory statement by the practitioner and evidence that the facility evaluated the facts regarding resolution of the malpractice case(s), as well as a statement of adjudication by an insurance company, court of jurisdiction, or statement of claim status from the attorney.  A good faith effort to obtain this information will be documented by a copy of the refusal letter or report of contact.

(4)  **Evaluation of Circumstances.**  Facility evaluating officials will consider VA's obligation as a health care provider to exercise reasonable care in determining that individuals are properly qualified, recognizing that many allegations of malpractice are proven groundless.  Facility officials will evaluate the individual's explanation of specific circumstances in conjunction with the primary source information related to the payment in each case.  This review will be documented and filed in Section VI of the standard folder.  Reasonable efforts will be made to ensure that only individuals who are well-qualified to provide patient care are permitted to do so. National Practitioner Data Bank (NPDB) reports will contain information regarding any malpractice payment made on behalf of the practitioner.  ***NOTE:  Questions concerning legal aspects of a particular case should be directed to the Regional Counsel, or General Counsel.***

l.  **NPDB Screening**

(1)  Applicants, including physician residents who function outside of the scope of their training program, i.e., those appointed as Admitting Officer of the Day, all members of the medical staff and other individuals who hold clinical privileges and who are, or have ever been, licensed to practice their profession or occupation in any job title represented in the NPDB Guidebook-VA Supplement, Attachment B, will be properly screened through NPDB.

(a)  Prior to appointment, including reappointment and transfer from another VA facility, whether or not VA requires licensure for appointment, reappointment, or transfer; or

(b)  Every 2 years following appointment or reappointment; and

(c)  Any time a clinical privilege application is made, including additional privileges after the original NPDB query

***NOTE:  If currently detailed to another VA facility or serving another facility as a consultant, the receiving facility will query NPDB.***

(2)  These procedures apply to all the VHA physicians, dentists and other health care practitioners who are appointed to the medical staff or who hold clinical privileges whether utilized on a full-time, part-time, intermittent, consultant, attending, WOC, on-station fee-basis, on-station scarce medical specialty contract, or on-station sharing agreement basis.  ***NOTE:  The requirements to query the NPDB do not apply to trainees other than those who function as staff***

11

*outside the scope of their training program; i.e., residents who serve as Admitting Officers of the Day.*

(3)  Evidence of query submission will be retained in the Credentialing and Privileging file until receipt of the NPDB screening results.

(4)  Because the NPDB is a secondary information source, any reported information must be validated by appropriate VA officials with the primary source; i.e., SLB, health care entity, malpractice payer.

(5)  Screening applicants and appointees with the NPDB does not abrogate the COS's and appropriate service chief's responsibility for verifying all information prior to appointment, privileging and/or reprivileging, or proposed Human Resource Management action.

(6)  If the NPDB screen shows adverse action or malpractice reports, an evaluation of the circumstances and documentation thereof, is required.  This evaluation should follow the guidelines outlined in the preceding subparagraph 5l(4) entitled "Evaluation of Circumstances," for malpractice, and similarly for adverse actions.

***NOTE:*** *This requirement does not apply to individuals functioning within the scope of a training program.*

(7)  The facility Director is the authorized representative who authorizes all submissions to the NPDB.  Any delegation of that authority to other facility officials is to be documented to include date of delegation, circumstances governing delegation, and title (not name) of the official who may make requests.

(8)  NPDB screening information is filed in Section VI of the Credentialing and Privileging folder.

m.  **Appointment and Termination of Title 5 and Title 38 Staff Relative to NPDB Screening**

(1)  Clinically privileged practitioners affected by this Handbook should be appointed only after a query to the NPDB has been initiated.  Queries should be initiated early in the credentials verification process to ensure the greatest possibility of having NPDB results prior to appointment.  There will be instances when having an applicant begin employment prior to receipt of the report will be in the best interest of the facility.  When all other credentialing procedures have been completed, the facility may appoint applicants.  ***NOTE:*** *If adverse information is uncovered, facility officials must then decide whether to separate the employee based on pre-employment suitability.*

(2)  Title 38 candidates may be appointed on a time limited basis under 38 U.S.C. 7405, while waiting for NPDB reports.  Individuals appointed on a full-time, part-time or intermittent basis may generally be given appointments for more than 1 year; e.g., 13 months, to permit them to receive benefits while on the temporary appointment.  Once reports are received and all questions regarding suitability for appointment are resolved, candidates may be converted to

probationary or permanent appointments under 38 U.S.C. 7401(1), 7401(3), or to other appointments under 38 U.S.C. 7405, as appropriate.

(3)  Scarce medical specialty contracts and sharing agreements may be effected pending reports regarding contract providers.  If the NPDB query generates negative information that requires modification of the contract, Federal Acquisition Regulations (FAR) and VA Acquisition Regulations (VAAR) must be followed.

(4)  **Appointment After Reports Received.**  If the NPDB shows <u>no</u> evidence of disciplinary action by any SLB, adverse action taken against clinical privileges, adverse action regarding professional society membership, or medical malpractice payment for the benefit of the practitioner, facility officials will file screen results along with other information related to the practitioner's credentials in the Credentialing and Privileging file and proceed with the desired type of appointment under appropriate authority.

(5)  If the NPDB screen shows action in any of the areas listed in the preceding paragraph, facility officials will verify that the applicant (or employee) fully disclosed all related information required and requested by VA in its pre-employment, credentialing and/or clinical privileging procedures.  The practitioner may then be employed, or continued in employment only after applicable procedural requirements are met.  Following are the types of reports that a facility might receive and the action, or source of guidance for action, to be used in each case.  ***NOTE:*** *The NPDB report and all related documents are to be filed in the Credentialing and Privileging File.*

(a)  If a NPDB report indicates any multiple of the following actions, requirements for each must be met.

 <u>1</u>.  <u>Evidence of Disciplinary Action by any SLB.</u>  Documentation of thorough review by officials involved in the appointment process.

 <u>2</u>.  <u>Adverse Action Taken Against Clinical Privileges.</u>  A reference from the facility(ies) or health care organization that took the action against the clinical privileges, detailing the privileges held and reason for adverse action, will be included with the credentialing information.

 <u>3</u>.  <u>Adverse Action Regarding Professional Society Membership.</u>  Particulars of the action will be verified with the professional society and included with credentialing information.

 <u>4</u>.  <u>Medical Malpractice Payment for the Benefit of the Practitioner.</u>  Facility officials will evaluate the primary source information and the individual's explanation of specific circumstances in each case and may require the applicant or employee to provide copies of documents pertaining to the case.  Questions regarding legal aspects of a particular case will be directed to Regional Counsel.  Documentation of all efforts in this regard will be a part of the credentialing information.

(b)  Reviews conducted subsequent to NPDB reports could result in a decision to:

 <u>1</u>.  Employ or continue in employment with no change in originally anticipated action.

<u>2</u>.  Employ or continue employment with changes, including, but not limited to, modification of clinical privileges or provision of training.

<u>3</u>.  Not appoint or terminate.

(c)  Once requirements for consideration and evaluation of any action reported by NPDB have been completed, employment or continued employment decision, if appropriate, will be made following guidance in this directive, or Title 5 policies and procedures specified in 5 CFR 731, as they apply to the category of practitioner.

(d)  When any initial, biennial or other NPDB report calls into question the professional competence or conduct of an individual appointed or utilized by VA, the facts and circumstances are to be reviewed to determine what action would be appropriate, including such actions as revision of clinical privileges, removal, etc.  Such actions must be closely coordinated with the Human Resource Management Service (and in the case of contracts and sharing agreements with Acquisition and Materiel Management Service) to ensure that they are processed in accordance with applicable requirements.

n.  **Transfer of Credentials.**  When practitioners are assigned to more than one health care facility for clinical practice, the "primary" or originating facility must convey all relevant credentials information to the gaining or satellite facility.  This may by accomplished by forwarding a certified true copy of the Credentialing and Privileging file to the receiving facility.  Alternatively the Credentials Transfer Brief (see Att. B) may be used to carry out this credentials transfer whenever its use can reasonably ensure the accurate and confidential transfer of credentialing information.  A copy of the original employment application, VA Form 10-2850, Application for Physicians, Dentists, Podiatrists, and Optometrists, or other appropriate employment forms should also be provided to the receiving facility.  The Transfer Brief is joined with the formal application for clinical privileges and any other facility specific forms.  The Transfer Brief replaces documents normally kept in the Credentialing file and is used when making credentialing decisions.  The gaining facility may use its own customary forms or format for notifying practitioners of their clinical appointments and documenting same.  *NOTE: The gaining facility must query the NPDB, accept the transferred credentials, appoint the practitioner, and grant the appropriate clinical privileges before the practitioner can engage in patient care.*

o.  **Disposition of Credentialing and Privileging Files**

(1)  When a VA employee separates from VA employment, the credentialing and privileging file will be retired to Federal Records Center (FRCs) 3 years after the employee separates from VA employment.  *NOTE: The Records Officer at each facility is responsible to advise anyone regarding the disposition of records.*

(2)  Credentialing and privileging files on applicants not selected for VA employment are to be destroyed 2 years after non-selection, or when no longer needed for reference, whichever is sooner.  *NOTE: The Records Officer at each facility is responsible to advise anyone regarding the disposition of records.*

**14**

**VHA HANDBOOK 1100.19**

(3)  Credentialing folders may be thinned if they become unmanageable, but the backup material must be available in the facility.

p.  **Reappraisal.**  Reappraisal is the process of evaluating the professional credentials, clinical competence and health status (as it related to the ability to perform the requested clinical privileges) of practitioners who hold clinical privileges within the facility.  The reappraisal process will include the practitioner's statements regarding successful or pending challenges to any licensure or registration; voluntary or involuntary relinquishment of licensure or registration; limitation, reduction or loss of privileges at another hospital; loss of medical staff membership; pending malpractice claims or malpractice claims closed since last reappraisal or initial appointment; mental and physical status; and any other reasonable indicators of continuing qualification.  Additional information regarding current or changes in licensure and/or registration status (primary source verification is required at the time of expiration of the license and at the time of reappointment); NPDB query results; peer recommendations; continuing medical education and continuing education units; and verification regarding the status of clinical privileges held at other institutions (if applicable) will be secured for review.  *NOTE: Information from VA Form 10-2623, Proficiency Report, or VA Form 3482b, Performance Appraisal, may be used.*

q.  **Temporary Appointments in Emergency Situations**.  When there is an emergent or urgent patient care need, a temporary appointment may be made, in accordance with MP-5, Part II, Chapter 2, by the facility Director prior to receipt of references or verification of other information and action by a Professional Standards Board.  Evidence of current licensure verification, confirmation of possession of comparable clinical privileges and a reference will be obtained prior to making such an appointment.  The facility Director must document, for the record, the specific patient care situation which warranted such an appointment.  *NOTE: Temporary appointments are for emergent patient care only and NOT to be used for administrative convenience.*

## 6.  PRIVILEGING

a.  **Provisions**

(1)  Privileges must be facility specific.  This means that privileges can only be granted within the scope of the medical facility mission.  Only privileges for procedures actually provided by the VA facility may be granted to a practitioner.

(2)  Only practitioners who are licensed and permitted by law and the facility to practice independently may be granted clinical privileges.  *NOTE:  Paragraph 6 contains the administrative and clinical requirements and procedures relating to the granting of clinical privileges, appraisal and reprivileging, reduction and revocation of privileges.*

(3)  Clinical privileging is the process by which a practitioner is granted permission by the institution to independently provide medical or other patient care services, within the scope of the practitioner's license and on an individual's clinical competence as determined by peer references, professional experience, health status (as it relates to the individual's ability to perform the requested clinical privileges), education, training, and licensure and registration.  *NOTE:  The delineation of clinical privileges must be facility specific and provider specific.*

b. **Review of Clinical Privileges.**  Applicants completing application forms will be required to respond to questions concerning clinical privileges at VA and non-VA facilities.  A minimum of two efforts to obtain verification of clinical privileges currently, or most recently, at other institutions should be made and documented in writing in the Credentialing and Privileging file. That verification should indicate whether the privileges are (or were) in good standing with no adverse actions or reductions for the specified period of time.

c. **Procedures.**  Privileges will be granted according to the procedures delineated within this Handbook and reflected in the Medical Staff Bylaws, Rules, and Regulations.  Clinical privileges are granted for a period not to exceed 2 years.  Clinical privileges are not to be extended beyond the 2-year period, which begins from the date the privileges are signed, dated, and approved by the facility Director.  The process for the renewal of clinical privileges should be initiated no later than 2 to 3 months prior to the date the privileges expire.  ***NOTE:  It is the responsibility of the facility and the practitioner to ensure that privileges are reviewed and renewed by the expiration date in order to prevent a lapse in the practitioner's authority to treat patients. Applicants for privileges will be kept apprised of the status of their application and involved in clarification of issues, as appropriate.***

(1) **General Criteria.**  General criteria for privileging will be uniformly applied to all applicants.

(a)  Such criteria must include, at least:

<u>1</u>.  Evidence of current licensure;

<u>2</u>.  Relevant training and/or experience;

<u>3</u>.  Current competence, and health status (as it relates to the individual's ability to perform the requested clinical privileges); and

<u>4</u>.  Consideration of any information related to medical malpractice allegations or judgments, loss of medical staff membership, loss and/or reduction of clinical privileges, or challenges to licensure.

(b)  Each service chief must establish additional criteria for granting of clinical privileges within the service consistent with the needs of the service and the facility.  Clinical privileges must be based on evidence of an individual's current competence.  When privilege delineation is based primarily on <u>experience</u>, the individual's credentials record must reflect <u>that experience</u>, and the documentation must include the numbers, types, and outcomes of related cases.

(2) **Delineation of Privileges.**  Privileges granted to an applicant must be facility specific, based on the procedures and types of services that are provided within the health care facility. The requirements or standards for granting privileges to perform any given procedure, if performed by more than one service, must be the same.  One standard of care must be guaranteed regardless of practitioner, service, or location within the facility.  The VA medical facility must delineate the process for granting privileges by level of training and experience, and/or patient risk categories, and/or using lists of procedures or treatments established by the Executive

Committee of the Medical Staff.  The process by which privileges are delineated must be documented as part of local VA facility policy.  An acceptable model might combine pertinent risk categories with specific clinical areas to produce a list of procedures by specialty.  Each clinical service or specialty is responsible to follow the locally delineated policy in defining the levels or categories of privileges being recommended for approval of the medical staff's Executive Committee.

(3) <u>Service Specific Privileges</u>.  Each practitioner will be assigned to and have clinical privileges in one clinical service and may be granted privileges in other clinical services (for example, a physician may have privileges in neurology and psychiatry, if appropriate).  The exercise of clinical privileges within any service will be subject to the policies and procedures of that service and the authority of that service chief.

d. **Initial Privileges.**  Clinical privileges will be granted for all physicians, dentists, and other health care professionals licensed for independent practice, covered by this Handbook when they are involved in patient care.  The intent of this process is to ensure that all physicians, dentists, and other health care practitioners, when they are functioning independently in the provision of medical care, have privileges that define the scope of their actions, which are based on current competence, within the scope of the mission of the facility, and other relevant criteria.  The process for the requesting and granting of clinical privileges is as follows:

(1)  Clinical privilege requests must be initiated by the practitioner.  For all practitioners desiring clinical privileges, the initial application for appointment must be accompanied by a separate request for the specific clinical privileges desired by the applicant.  The applicant has the responsibility to establish possession of the appropriate qualifications, and the clinical competency to justify the clinical privileges request.

(2)  The applicant's request for clinical privileges, as well as all credentials offered to support the requested privileges, will be provided for review to the service chief responsible for that particular specialty area.  The service chief will review all credentialing information including health status (as it relates to the ability to perform the requested clinical privileges), experience, training, clinical competence, judgment, clinical and technical skills, professional references, conclusions from performance improvement activities, and any other appropriate information.  The documentation of this review must include, at least, a list of the documents reviewed and the rationale for the conclusions.  The service chief will recommend approval, disapproval, or modification of the requested clinical privileges.  This recommendation may include a limited period of direct supervision, or proctoring by an appropriately privileged practitioner, for privileges that are high risk as defined by medical center policy.

(3)  Subsequent to the service chief's review and recommendation, the request for privileges, along with the appointment recommendation of the Professional Standards Board (PSB) or credentialing committee (if applicable), will be submitted to the medical staff's Executive Committee for review.  The medical staff's Executive Committee will evaluate the applicant's credentials to determine if clinical competence is adequately demonstrated to support the granting of the requested privileges.  Minutes will reflect the documents reviewed and the rationale for the stated conclusion.  A final recommendation will be submitted to the facility Director.

17

(4)  Residents who are appointed, outside of their training program, to work on a fee basis as Admitting Officer of the Day must be licensed, credentialed, and privileged for the duties they are expected to perform.  In this capacity, they are not working under the auspices of a training program, and must meet the same requirements as all physicians and dentists appointed at the facility.  The term "resident" also includes individuals in advanced postgraduate education programs who are typically referred to as "fellows."

(5)  Copies of  current clinical privileges must be available to hospital staff on a need-to-know basis in order to ensure providers are functioning within the scope of their clinical privileges.  Operating rooms and intensive care units are examples of areas where staff must be aware of provider privileges.  Copies of privileges may be given to individuals on a need-to-know basis (e.g., a service chief responsible for monitoring compliance with the privileges granted, or a pharmacist who verifies prescribing privileges or limitations on prescribing for certain medical staff members).  The mechanism is to be concurrent with exercise of privileges, not retrospective.  Employees performing procedures outside the scope of their privileges may be subject to disciplinary or administrative action.

(6)  The requesting and granting of clinical privileges for COSs and facility Directors will follow the procedures, as outlined for other practitioners.  The request for privileges will be reviewed, and a recommendation made, by the relevant service chief responsible for the particular specialty area in which the COS or Director requests privileges.  When considering clinical privileges for the COS an appropriate practitioner will chair the medical staff's Executive Committee and the COS will be absent from the deliberations.   The medical staff's Executive Committee recommendations regarding approval of requested privileges will be submitted directly to the facility Director for action.

(7)  The privileging of facility Directors desiring clinical privileges will follow the procedures as outlined for new practitioners.  The approval authority for the requested privileges will be delegated to the Associate Director who is authorized to act as facility Director for this purpose.

(8)  When a privileged practitioner is being considered for transfer, detail, or to serve as a consultant to another VA facility, transfer of credentials are to be accomplished as outlined in subparagraph 5p.  In all cases, the practitioner will request privileges at the receiving facility and provide the facility with the required documentation.  Since privileges are facility specific as well as practitioner specific, they are not transferable.  The receiving facility will initiate a new NPDB query.

e.  **Temporary Privileges in Emergency Situations.**  Temporary privileges for health care professionals in the event of emergent or urgent patient care needs, may be granted by the facility Director at the time of a temporary emergency appointment.  Such privileges will be based on documentation of a current State license and other reasonable, reliable information concerning training and current competence.  The recommendation for temporary privileges will be made by the COS and approved by the facility Director.  Temporary privileges should not exceed 45 workdays.

f. **Reappraisal and Reprivileging**

(1) **Reappraisal.**  Reappraisal is the process of evaluating the professional credentials, clinical competence, and health status (as it relates to the ability to perform the requested clinical privileges) of practitioners who hold clinical privileges within the facility.

(a)  Reappraisal for the granting of clinical privileges must be conducted for each practitioner at least every 2 years.

<u>1</u>.  The reappraisal process will include the practitioner's statements regarding successful or pending challenges to any licensure or registration; voluntary or involuntary relinquishment of licensure or registration; limitation, reduction or loss (voluntary or involuntary) of privileges at another hospital; loss of medical staff membership; pending malpractice claims or malpractice claims closed since last reappraisal or initial appointment; mental and physical status (as it relates to the ability to perform the requested clinical privileges); and any other reasonable indicators of continuing qualifications.

<u>2</u>.  Additional information regarding licensure and/or registration status; NPDB querying results; peer recommendations; continuing medical education and continuing education unit accomplishments; and information regarding the status of clinical privileges held at other institutions (if applicable) will be secured for review.

***NOTE:***  *Information from VA Form 10-2623 Proficiency Reports or VA Form 3482b Performance Appraisal, may be considered.*

(b)  Evaluation of professional performance, judgment, and clinical and/or technical competence and skills is to be based in part on results of provider specific performance improvement activities.  Ongoing reviews conducted by service chiefs will include, when applicable, information from surgical case review, infection control reviews, drug usage evaluation, medical record review, blood usage review, pharmacy and therapeutic review, monitoring and evaluation of quality, utilization, risk, and appropriateness of care.

(c)  The reappraisal process should include consideration of such factors as the number of procedures performed or major diagnoses treated, rates of complications compared with those of others doing similar procedures, and adverse results indicating patterns or trends in a practitioner's clinical practice.

(2) **Reprivileging.**  Reprivileging is the process of granting privileges to a practitioner who currently holds privileges within the facility.

(a)  This process must be conducted at least every 2 years.  Requests for privileges will be processed in the same manner as initial privileges.  Practitioners must request privileges in a timely manner prior to the expiration date of current privileges.  It is suggested that facilities allow a minimum of 2 to 3 months to process privilege requests.

(b)  The service chief will assess a minimum of two peer recommendations and all other information that addresses the professional performance, judgment, clinical and/or technical skills, any disciplinary actions, challenges to licensure, loss of medical staff membership,

changes in clinical privileges at another hospital, health status (as it relates to the ability to perform the requested clinical privileges), and involvement in any malpractice actions. The service chief must document (list documents reviewed and the rationale for conclusions reached) that the results of quality of care activities have been considered in recommending individual privileges and complete the "Assessment by Service Chief for Renewal of Clinical Privileges." Upon completion of this assessment, the service chief will make a recommendation as to the practitioner's request for clinical privileges.

(c)   The requested privileges and the service chief's recommendation will be presented, with the supporting credentialing, health status, and clinical competence information, to the medical staff's Executive Committee for review and recommendation. The decision of the medical staff's Executive Committee will be documented (minutes will reflect the documents reviewed and the rationale for the stated conclusion) and submitted to the facility Director, as the approving authority, for final action.

(d)   Because facility mission and clinical techniques change over time, it is normal that clinical privileges may also change. The service chief will review, with the practitioner, the specific procedures and/or treatments that are being requested. Issues such as documented changes in the facility mission, failure to perform operations and/or procedures in sufficient number or frequency to maintain clinical competence in accordance with facility established criteria, or failure to use privileges previously granted, will affect the service chief's recommendation for the granting of new privileges. These actions will be considered changes and will not be construed as a reduction, restriction, loss, or revocation of clinical privileges. Such changes will be discussed between the service chief and the involved practitioner.

(e)   The process of reappraisal and granting new clinical privileges for facility Directors and COSs will be the same as outlined in preceding paragraphs. The facility Director's or COS's request for privileges will be reviewed, and a recommendation made, by the relevant service chief responsible for the particular specialty area in which the privileges are requested. When the COS is being considered for privileging, the COS will be absent from the executive committee of the medical staff deliberations, which an appropriate practitioner will chair. The medical staff's Executive Committee recommendations related to the approval of the requested privileges will be submitted directly to the Director for action, or to the Associate Director who is authorized to act as facility Director for this purpose.

(f)   Practitioners may submit a request for modification of clinical privileges at any time. Requests to increase privileges will be accompanied by the appropriate documentation which supports the practitioner's assertion of competence, i.e., advanced educational or clinical practice program, clinical practice information from other institution(s), references, etc. A query to the NPDB will be made at the time of any practitioner request for additional privileges. Requests for other changes should be accompanied by an explanatory statement(s). The request for modification of clinical privileges, supporting documents, and practitioner's Credentialing and Privileging folder will be presented to the appropriate service chief for review. The service chief will consider the additional information and the entire Credentialing and Privileging folder before making a recommendation to the medical staff's Executive Committee. The medical staff's Executive Committee will present a recommendation to the facility Director for action.

g. **Reduction and Revocation of Privileges.**  This paragraph defines policy and procedures related to the reduction and/or revocation of clinical privileges based on deficiencies in professional performance.  Management officials are prohibited from taking or recommending personnel actions (resignation, retirement, reassignment, etc.) in return for an agreement not to initiate procedures to reduce or revoke clinical privileges where such action is indicated.

(1)  **General Provisions**

(a)  These activities may be separate from the reappraisal and reprivileging process.  Data gathered in conjunction with the facility's performance improvement activity is an important tool for identifying potential deficiencies.  Material which is obtained as part of a protected performance improvement program (i.e., under 38 U.S.C. 5705), may not be disclosed in the course of any action to reduce or revoke privileges, nor may any reduction or revocation of privileges be based directly on such performance improvement data.  If such information is necessary to support a change in privileges, it must be developed through mechanisms independent of the performance improvement program, such as administrative reviews and boards of investigation.  In these instances, the performance improvement data may have triggered the review; however, the quality improvement information is confidential and privileged in accordance with 38 U.S.C. 5705, and therefore must be rediscovered through the administrative review or investigation process.

(b)  Reduction of privileges.  A reduction of privileges may include restricting or prohibiting performance of selected specific procedures, or prescribing and/or dispensing controlled substances.  Reduction of privileges may be time limited and/or have restoration contingent upon some condition, such as demonstration of recovery from a medically disabling condition or further training in a particular area.  Revocation of privileges refers to the permanent loss of clinical privileges.

(c)  If it becomes necessary to formally reduce or revoke clinical privileges based on deficiencies in professional performance, the procedures indicated in this directive must be followed.  Procedures for reduction and revocation of clinical privileges are identified in following paragraphs, and apply to all practitioners included within the scope of this directive.

(d)  Adverse professional review action.  Any professional review action that adversely affects the clinical privileges of a practitioner for a period longer than 30 days, including the surrender of clinical privileges or any voluntary restriction of such privileges, while the practitioner is under investigation, is reportable to the NPDB pursuant to the provisions of the VHA policy regarding NPDB reporting.

*NOTE:  Summary suspension pending comprehensive review and due process, as outlined in this section on reduction and revocation, is not reportable to the NPDB.  However, the notice of summary suspension to the practitioner should include a notice that if a final action is taken, it will be reported to the NPDB.  The notice of summary suspension should also contain notice to the individual of all due process rights.*

(e)  Procedures applicable to administrative heads.  Procedures to reduce and revoke clinical privileges identified within this Handbook are applicable to Directors, COSs, Clinical Managers, and VISN Directors.  All responsibilities normally assumed by the COS during the clinical

privileging reduction or revocation process will be assigned to an appropriate practitioner who serves as acting chair of the medical staff's Executive Committee.  The COS may appeal the Director's decision or the Director may appeal the Associate Director's decision regarding the reduction of privileges decision to the VISN Director, just as all practitioners may appeal such a decision.  A VISN Director whose clinical privileges to practice at a given facility are reduced or revoked may appeal to the Chief Network Officer.

(2)  **Reduction of Privileges**

(a)  Initially, the practitioner will receive written notice of the proposed changes in privileges from the COS.  The notice will include a discussion of the reason(s) for the change.  The notice should also indicate that if a reduction or revocation is effected based on the outcome of the proceedings, a report will be filed with the NPDB, with a copy to the appropriate SLBs in all states in which the practitioner holds a license, and in the State in which the facility is located.  The notice will include a statement of the practitioner's right to be represented by an attorney or other representative of the practitioner's choice throughout the proceedings.

(b)  The practitioner will be allowed to review all evidence not restricted by regulation or statute upon which proposed changes are based.  Following that review, the practitioner may respond in writing to the COS's written notice of intent.  The practitioner must submit a response within 10 workdays of the COS's written notice.  If requested by the practitioner, the COS may grant an extension for a brief period, normally not to exceed 10 workdays, except in extraordinary circumstances.

(c)  All information will be forwarded to the facility Director for decision.  The facility Director will make, and document, a decision on the basis of the record.  If the practitioner disagrees with the facility Director's decision, a hearing may be requested.  The practitioner must submit the request for a hearing within 5 workdays after receipt of decision.

(d)  The facility Director will appoint a review panel of three professionals, within 5 workdays after receipt of the practitioner's request for hearing, to conduct a review and hearing.  At least two members of the panel will be members of the same profession. This review panel hearing will be the only hearing process conducted in connection with the reduction of privileges; any other review processes will be conducted on the basis of the record.

(e)  During such hearing, the practitioner has the right to be present throughout the evidentiary proceedings, represented by an attorney or other representative of the practitioner's choice, and to cross-examine witnesses.  ***NOTE:*** *The practitioner has the right to purchase a copy of the transcript or tape of the hearing.*

(f)  In cases involving reduction of privileges, a determination will be made as to whether disciplinary action should be initiated.

(g)  The panel will complete the review and submit the report within 15 workdays from the date of the close of the hearing.  Additional time may be allowed by the facility Director for extraordinary circumstances or cause.  The panel's report, including findings and recommendations, will be forwarded to the facility Director, who has authority to accept, reject, accept in part, or modify the review panel's recommendations.

(h)  The facility Director will issue a written decision within 10 workdays of the date of receipt of the panel's report.  If the practitioner's privileges are reduced, the written decision will indicate the reason(s).  The signature of the facility Director constitutes a final action and the reduction is reportable to the NPDB.

(i)  If the practitioner wishes to appeal the Director's decision, the practitioner may appeal to the appropriate VISN Director within 5 workdays of receipt of the facility Director's decision. This appeal option will not delay the submission of the NPDB report.

(j)  The VISN Director will provide a written decision, based on the record, within 20 workdays after receipt of the practitioner's appeal.  *NOTE:  The decision of the VISN Director is not subject to further appeal.*

(3)  **Revocation of Privileges**

(a)  Recommendations to revoke a practitioner's privileges will be made by the medical staff's Executive Committee, based upon review and deliberation of clinical performance and professional conduct information.  When revocation of privileges is proposed and combined with a proposed demotion or dismissal, the due process rights of the practitioner will be accommodated by the hearing provided under the dismissal process.  Dismissal constitutes a revocation of privileges, whether or not there was a separate and distinct privileging action, and will be reported without further review or due process to the NPDB.  When revocation of privileges is proposed and not combined with a proposed demotion or dismissal, the due process procedures under reduction of privileges will pertain.

(b)  In instances where revocation of privileges is proposed for permanent employees appointed under 38 U.S.C. 7401(1), the revocation will be combined with proposed action to discharge the employee under 38 U.S.C., Part V, Chapter 74, Subchapter V.  *NOTE: Practitioners whose privileges are revoked, for professional competence or professional conduct, will be reported to the NPDB in accordance with the VHA policy on NPDB reporting. In addition, the practitioner's practice must be reviewed for reporting to SLB(s) consistent with VHA policy on SLB reporting .*

(c)  For probationary employees appointed under 38 U.S.C. 7401(1), the proposed revocation will be combined with probationary separation procedures contained in MP-5, Part II, Chapter 4, and its VHA Supplement.  For employees appointed under 38 U.S.C. 7405, the proposed revocation will be combined with actions to separate the employee under the provisions of MP-5, Part II, Chapter 9, and its VHA Supplement.  Practitioners whose privileges are revoked will be reported to the NPDB according to procedures identified in the VHA policy regarding NPDB reporting.

(d)  When the revocation of privileges is proposed for employees not covered under subparagraph 6g(3)(b)and (c), consideration must be given to discharging or removing the employee, as applicable.  It may be desirable to consider other alternatives, such as demotion or reassignment to a position that does not require privileges, where appropriate.  *NOTE: Revocation procedures will be conducted in a timely fashion.  Appropriate action must be taken*

**VHA HANDBOOK 1100.19**                                                    **March 6, 2001**

*to see that the employee whose privileges were ultimately revoked does not remain in the same position for which the privileges were originally required.*

    (4)  **Management Authority.**  Nothing in these procedures restricts the authority of management to temporarily detail or reassign a practitioner to non-patient care areas or activities, thus in effect suspending privileges while the proposed reduction of privileges or discharge, separation, or termination is pending.  Further, the facility Director, on the recommendation of the COS, may summarily suspend privileges, on a temporary basis, when there is sufficient concern regarding patient safety or specific practice patterns.  Individuals appointed under authority of 38 U.S.C. 7405 may be terminated when this is determined to be in the best interests of VA, in accordance with provisions of MP-5, Part II, Chapter 9 and its VHA Supplement, without regard to the procedural requirements indicated.

## STANDARD (SIX-PART) CREDENTIALING AND PRIVILEGING FOLDER

**1.  General Provisions**

a.  The credentialing and privileging folder is the standard system for the establishment and maintenance of credentialing and privileging and related documents.  Other information related to appointment is located in the employee's Official Personnel Folder.  The contents of the folder are based on requirements outlined in the Veterans Health Administration (VHA) Handbook 1100.19, Credentialing and Privileging.

b.  The facility Chief of Staff is responsible for maintenance of the Credentialing and Privileging system.  The folder will be kept active as long as the practitioner is employed by the Department of Veterans Affairs (VA) facility.  If the practitioner transfers to another VA facility, the folder will transfer to the new employing location.

**2.  Format and/or Filing Sequence**

a.  The model folder provided to all facilities by the Chief Medical Director (now the Under Secretary for Health) on April 9, 1991, represents a practitioner who has held appointment or been utilized to provide on-station patient care for more than 2 years.  An appropriate Credentialing and Privileging folder is to be established for each practitioner regardless of the length of service.  The specific sections of the standard folder are identified as follows:

(1)  <u>Section I</u>.  Application and Reappraisal Information.

(2)  <u>Section II</u>.  Clinical Privileges.

(3)  <u>Section III</u>.  Professional Education and Training.

(4)  <u>Section IV</u>.  License(s).

(5)  <u>Section V</u>.  Professional Experience.

(6)  <u>Section VI</u>.  Other Practice Information.

b.  Sections I and II provide for a complete overview of the individual practitioner's qualifications, type of appointment and clinical privileges.  Sections III through IV represent the support documents to the information presented in Sections I and II.  All documents are to be filed in the order specified.

**March 6, 2001**                                          **VHA HANDBOOK 1100.19**
                                                                  **APPENDIX B**

## SAMPLE FORMAT FOR CREDENTIALS TRANSFER BRIEF

***NOTE:*** *Any item not verified at the primary source is listed with notation of information substituted.*

Medical Staff Office - Name of Sending Facility:  _____Date:_____

Medical Staff Office - Name of Gaining Facility:  _____

1.  Practitioner Name, M.D.:  Type of appointment: Social Security Number: Specialty

2.  Education and Training:
    a.  Medical Degree (MD, MBBS):
    b.  Internship
    c.  Residency
    d.  Fellowship
    e.  Educational Commission for Foreign Medical Graduates (ECFMG) passed (certificate #)

3.  State License #              expires
    Drug Enforcement Administration (DEA) License #                  expires

4.  Board Certified:  include subspecialty

5.  Basic Cardiac Life Support (BCLS) and Advanced Cardiac Life Support (ACLS) certification

6.  Clinical privileges granted in _____(copy attached).  Expiration date _____

7.  National Practitioner Data Bank (NPDB) Query date:
    NPDB Query response:

8.  (Provider's Name) does not have a physical or mental health condition that would adversely affect the applicant's ability to carry out the clinical duties requested from _____ (annotate the name of the Department of Veterans Affairs (VA) medical center or Health Care System); is known to be clinically competent to practice the full scope of privilege granted at (home facility), to satisfactorily discharge the applicant's professional and ethical obligations, as attested to by (name and telephone number of Service Chief).  (Service Chief) (has or does not have) additional information relating to (provider's name) competence to perform granted privileges.

9.  (Provider's Name) credentialing file and the documents contained therein have been reviewed and verified as indicated in thepreceding.  The information conveyed in this memorandum reflects credentials status as of _____.  The credentialing file contains no additional information relevant to the privileging of the provider at your medical center.

10.  ___(Typed Name)_, Medical Staff Coordinator, telephone # _____ fax #_____

_____
          (Signature must appear above typed name.)

                                                                            **B-1**

### INSTRUCTIONS FOR USING THE
### CREDENTIALS TRANSFER BRIEF FORMAT

***NOTE:*** *Any information that has not been verified at the primary source must be noted as such on the Transfer Brief. The Transfer Brief must specify what effort was taken to verify the item and what information has been substituted for the verification.*

**Paragraph 1**. Complete name, type of appointment, social security number and clinical specialty.

**Paragraph 2.** List qualifying degree, internship, residency, fellowship and the qualifying training as appropriate. Include completion date of each and indicate presence or absence of primary source verification in the Credentialing file.

**Paragraph 3.** List all currently held state licenses, registrations and certifications: expiration date and primary source verification status of each.

**Paragraph 4.** List all applicable specialty and/or board certifications and recertifications, expiration date, and primary source verification status of each.

**Paragraph 5**. List all applicable life support training (BCLS, ACLS, etc.), and expiration date.

**Paragraph 6.** State the type of privileges currently held by the Home facility, and the expiration date of current clinical privileges. Attach copy of current privileges.

**Paragraph 7**. List date of most recent NPDA and Federation of State Medical Board queries.

**Paragraph 8.** Provide a brief statement describing the applicant's health status and actual clinical performance with respect to the privileges granted at the sending facility, the discharge of applicant's professional obligation as a medical staff member, and applicant's ethical performance. The paragraph must contain a statement indicating the presence or absence of other relevant information in the recommendation relating to the provider's competence for privileges, as granted, along with a means of direct contact with the person making the recommendation.

**Paragraph 9.** Provide certification that the credentialing folder was reviewed and is accurately reflected in the Brief as of (annotate that date).

**Paragraph 10.** Provide the name, paper or electronic signature, title, phone number and Fax number of the designated contact (i.e., Medical Staff Coordinator) at the sending facility.