UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 09-23372-CV-HUCK/O'SULLIVAN

TIE QIAN

    Plaintiff,

v.

ERIC K. SHINSEKI, SECRETARY,
DEPARTMENT OF VETERANS AFFAIRS,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Dr. Tie Qian filed suit against Defendant Eric K. Shinseki in his capacity as the Secretary of the Department of Veterans Affairs, alleging that his medical staff privileges were revoked, that he was dismissed from his temporary position as a physician, and that the revocation of his privileges was reported to the National Practitioner Data Bank, all without the benefit of constitutionally-guaranteed due process. This matter is before the Court on Mr. Shinseki's Motion for Summary Judgment [D.E. #29], filed July 26, 2010. For the reasons discussed below, the Court grants Defendant's Motion.

I.    **FACTUAL BACKGROUND**

Starting in July 2001, Dr. Tie Qian was employed as a physician at the Department of Veterans Affairs ("VA") Medical Center in Miami, Florida. (Def.'s Mot. for Summ. J. [D.E. #29] at 2.) Dr. Qian was hired in a temporary appointment status under 38 U.S.C. § 7405(a)(1). (*Id.*) On June 30, 2006, Dr. Qian's temporary appointment status was extended for a term not to exceed June 30, 2009. (*Id.*)

On May 9, 2007, Dr. Qian's supervisor, Dr. Alberto Martinez-Arizala, provided a letter to Dr. Qian detailing an April 11, 2007 conversation between them. (Def.'s Mot. for Summ. J., Ex. 6.) In the April 11 conversation, Dr. Martinez-Arizala counseled Dr. Qian regarding (1) inappropriate copying and pasting of notes in the Computerized Patient Record System and (2) failure by Dr. Qian

1

to recognize, document, and treat abnormal lab issues. (*Id*.) The May 9 letter served as additional, written counseling regarding copying and pasting notes in the Record System. (*Id*.) Dr. Martinez-Arizala warned Dr. Qian that his progress would be monitored in monthly chart review audits. (*Id*.) Less than one month later, on June 1, 2007, Dr. John Vara, the Chief of Staff, and Paul Magalian, the Acting Director of the Medical Center, sent Dr. Qian a letter informing him that a Special Professional Standards Board was convened to complete an administrative review "regarding questions of . . . clinical competence, including but not limited to inappropriate copying and pasting of patient medical notes in the Computerized Patient Record System; failure to appropriately document interdisciplinary team medical notes; and failure to follow-up on [a] patient's abnormal laboratory values." (Def.'s Mot. for Summ. J., Ex. 7.) The letter referenced the procedures set forth in Veterans Health Administration ("VHA") Handbook 1100.19 and Dr. Qian's due process rights under the Medical Staff Bylaws for the Miami VA Healthcare System. (*Id*.) It also noted that he had the right to be represented by an attorney throughout the proceedings because a report might be filed with the National Practitioner Data Bank or state licensing boards.

On August 2, 2007, Ronald B. Tolchin, D.O., submitted to Dr. Vara a letter from the Management Review Board,[1] which Dr. Tolchin chaired, evaluating three cases involving Dr. Qian that Dr. Martinez-Arizala submitted for review. (Def.'s Mot. for Summ. J., Ex. 8.) The letter noted serious problems in Dr. Qian's medical practices, including "serious deviations from the standard of care," harm to patients, and "a pattern of misrepresentation of the medical record." (*Id*.) The Management Review Board recommended that an official administrative investigative board be convened before further recommendations were made. (*Id*.)

On August 16, 2007, Dr. Vara and Mr. Magalian again wrote to Dr. Qian, this time to notify him that his medical staff privileges were being suspended for up to 30 days on the basis of the findings of the Special Professional Standards Board. (Def.'s Mot. for Summ. J., Ex. 9.)

On September 2, 2007, the Medical Center's Professional Standards Board chartered a Management Review Team "to conduct a comprehensive review of the clinical practice and professional conduct" of Dr. Qian. (Def.'s Mot. for Summ. J., Ex. 10.) After reviewing the evidence

---

[1] It appears that the Management Review Board was the Special Professional Standards Board that was referenced in Dr. Vara's June 1, 2007 letter.

against Dr. Qian, the Management Review Team concluded that Dr. Qian "demonstrated a sustained pattern of unacceptable clinical practice and professional conduct that was not remedied despite repeated episodes of formal counseling." (*Id.*)  The team found that Dr. Qian's practices "pose[d] an unacceptable risk to patients and represent[ed] a significant deviation from standard professional practice[,]" and further recommended that his medical staff privileges be revoked.  (*Id.*)

On September 14, 2007, Mr Magalian sent a memorandum to Dr. Qian informing him that his medical staff privileges were being revoked based on the findings of the Professional Standards Board and the Management Review Team, which were agreed upon by the Medical Executive Committee.  (Def.'s Mot. for Summ. J., Ex. 11.)  The letter informed Dr. Qian that under the Medical Staff Bylaws and the applicable VHA handbooks he was entitled to due process.  (*Id.*)  The letter then proceeded to set forth the due process to which he was entitled, including being entitled to review all evidence against him, submitting a response within 10 days of receiving the evidence, and having a hearing in front of a panel including at least two members of his profession, during which he could be represented by an attorney and cross-examine witnesses.  (*Id.*)  The letter also noted that the hearing panel's decision regarding revocation of his privileges would be reportable to the National Practitioner Data Bank.  (*Id.*)  Also on September 14, 2007, Larry Brinkman, Chief of Human Resources, sent Dr. Qian a memorandum informing him that his appointment was terminated effective September 28, 2007.  (Def.'s Mot. for Summ. J., Ex. 12.)  The memorandum informed Dr. Qian that the termination constituted revocation of his medical staff privileges because he no longer held a position with VA.  (*Id.*)

Subsequent to receiving the two September 14, 2007 memoranda, Dr. Qian requested several times—both individually and through an attorney—that he be given access to the evidence against him. (Pl.'s Resp. [D.E. #32], Exs. 10, 11.)  Because there were delays before the evidence was provided to him, Dr. Qian was granted extensions of time to reply to the revocation of his privileges. (*Id.*)  Dr. Qian received some of the evidence against him on September 27, 2007, and eventually received the remainder of evidence against him on October 31, 2007.  (Def.'s Reply [D.E. #34], Exs. 1, 2.)  He submitted a written response on November 6, 2007.  (*Id.*)

On February 22, 2008, Dr. Qian and his attorney appeared in front of a Review Panel for a hearing regarding the allegations against Dr. Qian and termination of his privileges.  (Def.'s Mot.

for Summ. J., Ex. 13.) The record from that hearing indicates that the Review Panel discussed the allegations against Dr. Qian and concluded that there was evidence proving "poor and questionable documentation practices, and failure to take appropriate action on abnormal laboratory results." (*Id*.) As a result, the Review Panel unanimously agreed with the Medical Executive Committee's decision to revoke Dr. Qian's privileges. (*Id*.) Shortly thereafter, in an undated letter believed to be written in mid-April 2008, Mary Berrocal, Director of the Medical Center, informed Dr. Qian of the official results of the hearing and that the revocation of his privileges would be reported to the National Practitioners Data Bank. (Def.'s Mot. for Summ. J., Ex. 14.) Ms. Berrocal informed Dr. Qian that he could appeal the decision within five days of receiving the letter. (*Id*.) Dr. Qian appealed to Nevin Weaver, Director of the VA Sunshine Healthcare Network, but Mr. Weaver rejected the appeal. (*Id*.) Dr. Qian's privilege-revocation was reported to the Data Bank on July 1, 2008. (Def.'s Mot. for Summ. J. at 5.)

## II.   PROCEDURAL POSTURE

On November 4, 2009, Dr. Qian filed suit against Eric K. Shinseki in his individual capacity as Secretary of the Department of Veterans Affairs. The Complaint states that Dr. Qian's suit was filed under the Civil Rights Act of 1964, 42 U.S.C. § 2000e. However, the Complaint contains no allegations regarding discrimination. Instead, the Complaint details what Dr. Qian alleges were violations of his due process rights.

Defendant Shinseki filed for summary judgment on July 26, 2010. Mr. Shinseki argued that Dr. Qian (1) presented no evidence to establish discrimination under Title VII of the Civil Rights Act of 1964,[2] and (2) was not denied due process. (Def.'s Mot. for Summ. J. at 5–6.) With regards to the latter claim, Mr. Shinseki specifically argued that (1) under the VA Handbook, as an "at will" employee Dr. Qian had no protected property interest in his continued employment, and (2) although

---

[2] On September 30, 2010, the Court held a hearing regarding Dr. Qian's purported discrimination claim. *See* Minutes from Hearing [D.E. #62]. On October 1, 2010, the Court issued an Order [D.E. #64] finding that Dr. Qian had not stated a claim for discrimination in his Complaint because there was no allegation of discrimination whatsoever. Because the time for amending the Complaint had passed, and also because any attempt to add a discrimination claim would be futile, as time-barred, the Court held that Dr. Qian's claim was limited to his claim regarding the alleged denial of due process.

Dr. Qian had a protected property interest in his medical staff privileges at the Medical Center, he benefitted from proper due process procedures that were constitutionally adequate, prior to having his medical staff privileges revoked. (*Id*. at 7–8.) However, elsewhere in the Motion, Mr. Shinseki appeared to argue that Dr. Qian was not entitled to the due process procedures listed in the Medical Staff Bylaws. (*Id*. at 9.) In his Response, Dr. Qian alleged that he was denied due process "[u]nder the Fourteenth Amendment" because he did not receive the benefit of the exact procedures regarding revocation of privileges listed in the Medical Staff Bylaws. (Pl.'s Resp. at 2.) He also alleged that he was entitled to a hearing before his privileges were revoked and he was terminated. Additionally, Dr. Qian claimed an entitlement to due process protections prior to his privileges being reported to the National Practitioner Data Bank. (*Id*.) In his Reply, Mr. Shinseki reasserted his position that although Dr. Qian had a protected property interest in his medical staff privileges, Dr. Qian was afforded constitutionally adequate process before his privileges were revoked and he was terminated. (Def.'s Reply at 2.)

The Court ordered supplemental briefing from the parties to address the aforementioned inconsistencies in Mr. Shinseki's position with regard to the due process procedures that Dr. Qian deserved, and to request clarification regarding an apparent inconsistency between the VHA Handbook and the Medical Staff Bylaws. (*See* Order Requiring Supplemental Briefing [D.E. #39].) At a status conference held after the briefing was requested, Mr. Shinseki's attorney took the additional position that Dr. Qian was not entitled to due process protections when his privileges were revoked, because he was hired in a temporary appointment. Neither party could clarify for the Court what legal authority it should look to to determine whether Dr. Qian was entitled to due process protections prior to revocation of his medical staff privileges, and, if so, the nature of that due process. In his supplemental briefing, Mr. Shinseki clarified his revised position, stating that Dr. Qian was not entitled to due process protections under provisions of the VHA Handbook. (*See* Def.'s Supplemental Briefing [D.E. #47] at 4–5.) In a later supplemental briefing, Mr. Shinseki repeated his position that Dr. Qian was not entitled to a hearing prior to revocation of his medical staff privileges. (*See* Def.'s Supplemental Authority and Summ. ¶ 15.) Dr. Qian asserts that there is no conflict between the Veterans Health Administration Handbook and the Medical Staff Bylaws

5

because both discuss due process procedures for revocation of privileges. (Pl.'s Supplemental Briefing [D.E. #49] at 4.)

### III. ANALYSIS

Dr. Qian alleges that his Fourteenth Amendment procedural due process rights have been violated. The Court must evaluate a plaintiff's claim based on what is alleged, rather what he claims it to be. *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994). As a federal employee, it is Dr. Qian's Fifth Amendment due process rights, rather than Fourteenth Amendment rights, that are at issue. Therefore, the Court must evaluate whether Dr. Qian's Fifth Amendment procedural due process rights have been abridged.

In order to be entitled to procedural due process, Dr. Qian must establish that he had a property interest that was abridged. *See* U.S. Const. amend. V. It is clear that an at-will employee, such as Dr. Qian, has no property interest in his continued employment. *See Davis v. Mobile Consortium of CETA*, 857 F.3d 737, 741 (11th Cir. 1988). However, the Eleventh Circuit has determined that a physician's medical staff privileges to a hospital can be a property interest protected by the Constitution's due process guarantees. *El Shahawy v. Harrison*, 875 F.2d 1529, 1532–33 (11th Cir. 1989). But this does not mean that every physician with medical staff privileges has a protected property interest in those privileges. The determination of whether medical privileges are a protected property interest depends entirely on whether there is an entitlement created by a "statute, legal rule, or mutually explicit understanding." *Todorov v. DCH Healthcare Authority*, 921 F.2d 1438, 1463 (11th Cir. 1991); *see Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."). The Court also must evaluate Dr. Qian's claim that he was entitled to these due process protections before the revocation of his privileges was reported to the National Practitioner Data Bank. Because Dr. Qian was a federal employee, this Court must look to federal law and regulations, as well as any agreement between the parties, to determine whether Dr. Qian has a claim of entitlement to his medical staff privileges or pre-reporting protections.

### A. Federal Statutes

The statute pursuant to which Dr. Qian was hired does not create for him a property interest in his medical staff privileges. Dr. Qian was hired in a *temporary* appointment status through 38 U.S.C. § 7405(a)(1)(A) into a position listed under 38 U.S.C. § 7401(1). Physicians hired *permanently* under 38 U.S.C. § 7401(1) are statutorily entitled to due process procedures when they face an adverse employment action, such as suspension or revocation of privileges. *See* 38 U.S.C. §§ 7461–64 (listing procedural requirements, including a Disciplinary Review Board, to which persons hired permanently under 38 U.S.C. § 7401(1) are entitled). However, there is no parallel statutory procedure for employees hired in a temporary appointment through 38 U.S.C. § 7405(a)(1). Thus, Dr. Qian has no statutorily-protected property interest in his medical privileges.

### B. Federal Regulations

A complicated series of regulations also implicate Dr. Qian's claim that he was entitled to due process protections. The Veterans Health Administration is located within the Department of Veterans Affairs. Title 32 U.S.C. § 7421 directs the Secretary of Veterans Affairs to "prescribe by regulation the hours and conditions of employment" for employees, including physicians, hired under any provision of 38 U.S.C. Chapter 74, which includes physicians hired in a temporary appointment under 38 U.S.C. § 7405(a)(1). Additionally, 38 U.S.C. § 7304 further delegates authority to the Under Secretary of Health—the head of the Veterans Health Administration—to prescribe all regulations necessary to the administration of the Veterans Health Administration, subject to approval by the Secretary. For the reasons explained below, the regulatory scheme governing Dr. Qian's appointment did not create for him a property interest in his medical privileges or entitle him to due process before revocation of his privileges was reported to the National Practitioner Data Bank.

#### 1. VA Handbook 5021

Dr. Qian alleges that he did not receive procedural due process prior to having his medical staff privileges revoked and being terminated. VA Handbook 5021 controls the inquiry as to whether Dr. Qian was entitled to such protections. In 2002, the VA Human Resources Management Policy 5, Part II ("MP-5, Part II"), which governed human resource issues, was rescinded and replaced with a series of VA and VHA handbooks and directives. *See* VA Handbook 5001,

Transmittal Sheet, Apr. 15, 2002. Under this new scheme, VA Handbook 5021—titled Employee/Management Relations—details procedures regarding personnel actions, including involuntary separations. Part VI of VA Handbook 5021 prescribes separation procedures for persons hired under 38 U.S.C. § 7405(a)(1). *See* VA Handbook 5021, Part VI.1 (specifying that this "part contains procedures for the separation of individuals appointed under authority of 38 U.S.C. . . . 7405[(a)(1)(A)]") (alteration in original).

Specifically, Paragraph 15 of Part VI governs involuntary termination of employees appointed under 38 U.S.C. § 7405(a)(1)(A). Paragraph 15.a states that when "effecting involuntary separations of employees serving under 38 U.S.C. 7405[(a)(1)(A)], the procedural requirements prescribed for separations, such as reviews by Professional Standards Boards or Disciplinary Boards, do not apply." Paragraph 15.b notes that advance notice of separation to the employee is preferable, but not required, while Paragraph 15.c mandates that a separated "employee will not be entitled to a review of the involuntary separation." Finally, Paragraph 15.d states that "the provisions of VHA Handbook 1100.18, relating to reporting to State licensing boards and license monitoring entities, must be followed in all instances in which an employee is separated whose standards of clinical practice are in question."

On its face, then, Paragraph 15 makes clear that Dr. Qian is not entitled to due process procedures related to his termination, except with regard to the provisions of VHA Handbook 1100.18, which govern reporting to state licensing boards and license monitoring entities. Dr. Qian has not alleged that the Hospital reported him to a state licensing board, or that the process of reporting was constitutionally infirm. As such, the Court does not have before it the issue of whether Dr. Qian was entitled to due process procedures under Handbook 1100.18, and, therefore, will decline to consider whether the Medical Center followed the process outlined in Handbook 1100.18.

### 2. *VHA Handbook 1100.17*

Dr. Qian alleges that the Medical Center reported him to the National Practitioner Data Bank without affording him proper due process procedures. VHA Handbook 1100.17 sets forth parameters for reporting a physician to the Data Bank following an "adverse action," which includes suspension and revocation of privileges. ¶ 6.a.1. Handbook 1100.17 requires that actions involving professional competence that affect medical staff privileges for more than 30 days must be reported

8

to the Data Bank. *Id.* ¶ 6.b.1. However, Handbook 1100.17 does not lay out a detailed process for how the Data Bank reporting must be conducted. Instead, it requires that "[p]rior to reporting to any [state licensing board] or [the Data Bank], appropriate internal VA medical center due process procedures, pursuant to the provisions of the VHA Credentialing and Privileging policy regarding reduction and revocation of privileges, must be completed." *Id.* ¶ 6.b.1.a. Therefore, the inquiry as to whether Dr. Qian received proper procedural protections before revocation of his privileges was reported to the Data Bank involves examining VHA Handbook 1100.19, which is the VHA Credentialing and Privileging policy.

### 3.  *VHA Handbook 1100.19*

As noted above, Dr. Vara and Mr. Magalian subjected Dr. Qian to an administrative review ostensibly under VHA Handbook 1100.19 and the Medical Staff Bylaws.[3] However, it is not clear that Dr. Qian, as an employee hired under 38 U.S.C. § 7405(a)(1)(A) was entitled to the due process protections specified by Handbook 1100.19. Because the Court finds that Dr. Qian was not entitled to due process under Handbook 1100.19, it is unnecessary for the Court to examine whether the Hospital properly followed the procedures detailed in Handbook 1100.19.[4]

VHA Handbook 1100.19 applies to all individuals that have medical staff privileges at a VHA facility. VHA Handbook 1100.19 ¶ 1.a. Paragraphs 6.g.2 and 6.g.3 specify detailed procedures for instituting a reduction or revocation of a practitioner's medical staff privileges. These provisions apply to all practitioners. However, under a section entitled "Management Authority,"

---

[3]  Dr. Vara's and Mr. Magalian's statements regarding the due process rights to which they believed Dr. Qian was entitled did not, by themselves, create an entitlement to due process. A claim of entitlement cannot arise from a unilateral promise, but instead must be conferred by statute, regulation, or a mutual understanding. *See Tefel v. Reno*, 180 F.3d 1286, 1300 (11th Cir. 1999) ("[E]xpectation does not equate with liberty or property, and a constitutionally protected interest cannot arise from relief that the executive exercises unfettered discretion to award.") (citing *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)); *see also Davis*, 857 F.3d at 742 (find that plaintiffs had no entitlement to due process when no right of entitlement was communicated to plaintiffs at the time of their hire).

[4]  Although the Court concludes that Dr. Qian was not entitled to due process, the Court notes that the record, as described above, indicates that Dr. Qian received the benefit of significant due process procedures that in many, if not all, respects followed the procedures required by VHA Handbook 1100.19 and the Medical Staff Bylaws.

9

Handbook 1100.19 states that "[i]ndividuals appointed under authority of 38 U.S.C. 7405 may be terminated when this is determined to be in the best interests of VA, in accordance with provisions of MP-5, Part II, Chapter 9 and its VHA Supplement, *without regard to the procedural requirements indicated.*" *Id.* ¶ 6.g.4 (emphasis added). As noted above, MP-5, Part II was replaced by VA Handbook 5021, which states that an employee hired under 38 U.S.C. § 7405(a)(1)(A) may be terminated without regard to due process procedures. This language in Paragraph 6.g.4 makes discretionary the procedural requirements from Paragraphs 6.g.2 and 6.g.3 for employees hired under 38 U.S.C. § 7405(a)(1)(A). Thus, VA Handbook 5021 and VHA Handbook 1100.19 are consistent in stating that employees hired under 38 U.S.C. § 7405(a)(1)(A) are not entitled to due process protections prior to revocation of their privileges or termination. As discussed above, through the review process Dr. Vara and Mr. Magalian detailed numerous reasons why Dr. Qian should be terminated. Although it was not articulated in this fashion, those were sufficient reasons why it was "in the best interests" of the VA to terminate Dr. Qian under Paragraph 6.g.4. On some level it is ironic that the apparently unnecessary procedural protections that Dr. Qian was provided produced evidence that legitimizes the Medical Center's decision to terminate his employment under Paragraph 6.g.4. Regardless, given the evidence against Dr. Qian, it was within the Medical Center's discretion to dismiss Dr. Qian without regard for the revocation and termination procedures.

### C.   Medical Staff Bylaws

Dr. Qian's final argument is that he was entitled to due process procedures under the Miami VA's Medical Staff Bylaws, which contain detailed procedures for dismissing a practitioner due to revocation of privileges. This argument fails because the Medical Staff Bylaws make clear that, in instances of conflict with the VA and VHA Handbooks, the Handbooks control. The Preamble of the Bylaws states that "[t]hese Bylaws and the rules and regulations of the medical staff and governing body bylaws (e.g. Handbooks, Directives, Manuals, and Circulars) must not conflict. These Bylaws do not create any rights or liabilities not otherwise provided for in VHA regulations or Federal law and regulations." In other words, to the extent that they conflict with the applicable Handbooks, the Bylaws cannot create procedural rights. Therefore, it is unnecessary for the Court to evaluate whether Dr. Qian received procedures consistent with the Bylaws, because Handbook

1100.19 makes clear that Dr. Qian could be terminated and have his privileges revoked without receiving the protections of a review process.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Shinseki has demonstrated that he is entitled to summary judgment. Therefore, Defendant's Motion for Summary Judgment is GRANTED.

DONE AND ORDERED in Chambers, Miami, Florida, on October 6, 2010.

_____
Paul C. Huck
United States District Judge

**Copies furnished to:**
Counsel of Record

Tie Qian
2516 Montclaire Cir
Weston, FL 33327
954-746-4980