1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
<u>**MIAMI DIVISION**</u>
CASE NUMBER 09-CV-23372-PCH

TIE QIAN,
      Plaintiff
      **vs.**
ERIC K. SHINSEKI,
Department of Veterans Affairs,
                        Defendants

7
8

<u>**HEARING HELD 9-30-2010**</u>
BEFORE THE HONORABLE PAUL C. HUCK
UNITED STATES DISTRICT COURT JUDGE

9

<u>APPEARANCES</u>:

10
11

FOR THE PLAINTIFF:          **TIE QIAN, ESQ.**
                            Pro Se Litigant
                            2516 Montclaire Cir
                            Weston, FL 33327

12
13
14

FOR THE DEFENDANT:          **KARIN D. WHERRY, AUSA**
                            **United States Attorney's Office**
                            **99 NE 4th Street**
                            Miami, FL 33132

15
16
17

REPORTED BY:                **PATRICIA SANDERS, RPR**
                            *United States Court Reporter*
                            400 North Miami Avenue, Suite 13-2
                            Miami, FL  33128
                            T: 305.523.5528
                            patricia_sanders@flsd.uscourts.gov

18
19
20
21
22
23
24
25

1      THE COURT:  Please be seated. Good afternoon.  We're

2  here on Qian versus Department of Veterans Affairs. May I have

3  appearances, please.

4      DR. QIAN:  My name is Dr. Qian.  I am representing

5  myself.

6      THE COURT:  Good afternoon.

7      MS. WHERRY: Good afternoon.  Karen Wherry on behalf of

8  the United States and Eric Shinseki, Secretary of the Veterans

9  Administration.

10      THE COURT:  Okay. The defendant has asked for a status

11  conference. I think it was probably a good idea.  The concern I

12  assume is what are the issues to be litigated in this case,

13  assuming it goes to trial.  Veterans Affairs says that this

14  case is limited to the claim of lack of due process.

15      Upon reviewing Dr. Quian's response to the motion for

16  status conference he says well, no, this is apparently some --

17  it includes some discrimination charges. I have gone through

18  the case I think fairly thoroughly.

19      The suit was filed back November 4th of last year. The

20  trial is scheduled for two weeks from now, approximately.  The

21  time to amend the complaint is long past. We have a summary

22  judgment that is filed.  We still are in the process of trying

23  to get everything we need to deal with the summary judgment.

24      It appears based on plaintiff's response that there

25  was an EEOC proceeding; is that correct?

00:02  1          DR. QIAN:  That's correct, Your Honor.

00:02  2          THE COURT:  Was that was back 07 and 08?

00:02  3          DR. QIAN:  That's correct.

00:02  4          THE COURT:  What was the nature of that claim?

00:02  5          DR. QIAN:  Right after the revocation and termination

00:02  6  at the Miami VA, plaintiff went to the EEOC and filed a formal

00:02  7  complaint.

00:02  8          THE COURT:  Based on what?

00:02  9          DR. QIAN:  Based on the discrimination nature of the

00:02  10 revocation of privilege and termination --

00:02  11         THE COURT:  Do you have a copy of the complaint in the

00:02  12 EEOC matter?

00:02  13         DR. QIAN:  Yes, I do.

00:02  14         THE COURT:  Would you hand that up?

00:02  15         DR. QIAN:  Sure.

00:02  16         THE COURT:  All right.

00:02  17         DR. QIAN:  I got a phone call from Your Honor's clerk.

00:03  18 Without knowing the nature of what the Court needs I brought

00:03  19 the whole package from the EEOC process.

00:03  20         THE COURT:  Okay.  Let me tell you where I am going.

00:03  21 And, Dr. Qian, you are at somewhat of a disadvantage not being

00:03  22 a lawyer obviously.

00:03  23         DR. QIAN:  That's correct.

00:03  24         THE COURT:  Just as a lawyer would be somewhat at a

00:03  25 disadvantage in trying to set their own broken arm. We both

00:03  1   have our areas of expertise.  Let me tell you what I am

00:03  2   thinking. I have read the complaint.  I have read your

00:03  3   response. I have read the defendant's motion for status

00:03  4   conference.

00:03  5          Even though the complaint in the first sentence

00:03  6   says -- let me see if I can find it. It says, this action is

00:04  7   filed under the Civil Rights Act of 1964 as amended, 42 U.S.C.

00:04  8   2000e et seq.

00:04  9          I don't see a single word that refers to

00:04  10  discrimination in the complaint. The only thing I can see in

00:04  11  the complaint as alleged is a claim that you were denied due

00:04  12  process.  Now, when I say discrimination I am using that in the

00:04  13  sense that you were discriminated against because of race or

00:04  14  gender, age, sex or something of that nature.

00:04  15          DR. QIAN:  That's correct.

00:04  16          THE COURT:  I don't see anything in the complaint.  I

00:04  17  went back and looked at the civil cover sheet where a plaintiff

00:04  18  that files a case is required to tell the Court what kind of a

00:05  19  case it is. You have employment checked off. The section that

00:05  20  says civil rights is not checked off.

00:05  21          Tell me where I am missing something.  I don't see

00:05  22  anything in the complaint that talks about discrimination in

00:05  23  general, not even a mention, any specific discrimination for

00:05  24  say race or national origin or something of that nature.

00:05  25          DR. QIAN:  To go back to the history of the case --

00:05  1          THE COURT:  No, no, no. I want to see where in the

00:05  2     complaint it says that.

00:05  3          DR. QIAN:  In the cover sheet of the complaint it says

00:05  4     clearly -- it's checked because of the jurisdiction, and I

00:05  5     quoted the Title Seven as the basis for the particular claim in

00:05  6     the District Court.  That shows the plaintiff's intention is to

00:05  7     pursue the discrimination claim.

00:06  8          Although at that time, November of 2009, the plaintiff

00:06  9     did not have solid evidence because of the nature of the case.

00:06  10    I did not put the hearsay or those in the complaint because

00:06  11    that was not solid documentation.  After the discovery process

00:06  12    had --

00:06  13         THE COURT:  Let me stop you again.

00:06  14         DR. QIAN:  Sure.

00:06  15         THE COURT:  A lawyer would know this, and a doctor

00:06  16    most likely would not.  You are bound by the parameters of your

00:06  17    allegations, what you say in the complaint. There's nothing in

00:06  18    the complaint that I see.  I am asking you again, look at the

00:06  19    complaint and tell me where in the complaint it says there's a

00:06  20    claim for discrimination based on -- what is it you are

00:06  21    claiming now so I will know?  Is it national origin?

00:06  22         DR. QIAN:  That's correct.

00:06  23         THE COURT:  Where does it say you somehow were denied

00:07  24    some rights or not promoted, etcetera or were discriminated

00:07  25    against or whatever adverse employment action was taken against

00:07  1    you by virtue of a discriminatory act based on national origin?

00:07  2            DR. QIAN:  The plaintiff was denied due process based

00:07  3    on national origin --

00:07  4            THE COURT:  I don't see it in there.  I don't think

00:07  5    it's in there. I want you to point out any page where it talks

00:07  6    about discrimination based on national origin or any other

00:07  7    prohibited characteristic --

00:07  8            DR. QIAN:  By indicating the law that is a clear

00:07  9    message to the Court that that is the intention of the

00:07  10   plaintiff.

00:07  11           THE COURT:  Then the answer is there isn't any, right?

00:07  12           DR. QIAN:  The law itself says that.

00:07  13           THE COURT:  There's not an allegation about

00:07  14   discrimination for national origin or any other prohibited

00:08  15   reason.

00:08  16           DR. QIAN:  There is one. That's why we're pursuing

00:08  17   it --

00:08  18           THE COURT:  Where is it?

00:08  19           DR. QIAN:  This case went through the EEOC for

00:08  20   years --

00:08  21           THE COURT:  What happened in the EEOC is not here --

00:08  22           DR. QIAN:  This is the next step after the EEOC.

00:08  23           THE COURT:  You are either not listening to me or I am

00:08  24   not communicating very well. You have not alleged a claim of

00:08  25   discrimination on the face of the complaint. It's just not

1  there.

2          DR. QIAN:  By putting the law in there --

3          THE COURT:  When you say you put the law in there you

4  cite to all of Section 2000. That means nothing. I don't know

5  all that is included in 42 U.S.C 2000e et seq, which means all

6  those matters.  So you have a problem there.

7          All right.  Let's talk about something else.  When was

8  the EEOC case terminated?

9          DR. QIAN:  The EEOC case terminated in August of 2009,

10 August 26th, 2009, to be specific. I have a copy of the

11 decision from the EEOC dated August 26th, 2009.

12          THE COURT:  You have a right to sue letter.

13          DR. QIAN:  Yes.

14          THE COURT:  What's the date of that?

15          DR. QIAN:  August 26th, 2009.

16          THE COURT:  Is that your understanding -- I assume you

17 were involved in the EEOC case?

18          MS. WHERRY:  I was not involved but I do have a copy

19 of the decision. And it is dated -- the appeal was dated

20 August 26th, 2009. The original agency decision was dated

21 January 29th, 2009. Dr. Qian took an appeal and that decision

22 was rendered on August 26th, 2009. This case having been filed

23 in November of 2009 were it to have been premised upon the

24 allegations --

25          THE COURT:  Why would it be time barred?

00:10  1          MS. WHERRY: It would have been timely filed except

00:10  2     it's a different case. So time-wise it would have been timely.

00:10  3          THE COURT:  What is the effect of the appeal -- let's

00:10  4     assume that there was a proper allegation of discrimination.

00:10  5     What would be the effect of the EEOC appeal?

00:10  6          MS. WHERRY:  The EEOC appeal sets the time from which

00:10  7     a claimant would be entitled to file a claim in Federal

00:10  8     District Court.  It could have resolved the case for purposes

00:10  9     of the claimant had the decision come out favorably for the

00:10  10    claimant.

00:11  11         And failing that the author of the appeal order

00:11  12    specifies at the end to the claimant essentially if you are not

00:11  13    happy with this decision you have 90 days from the date of this

00:11  14    appeal in which to file a claim in Federal District Court.

00:11  15         THE COURT:  It's the same as any right to sue letter

00:11  16    even in the absence of an appeal?

00:11  17         MS. WHERRY: That's correct.

00:11  18         THE COURT:  All right. I did not know if there were

00:11  19    special rules that applied to an employee of a Governmental

00:11  20    agency.  I thought they had a different track for employment

00:11  21    claims.

00:11  22         MS. WHERRY:  I understand that the extent to which

00:11  23    agencies, including those in my office, would have an

00:11  24    entitlement to any grievance proceedings would be with the

00:11  25    Merit Systems Protection Board. That is because it has been

00:11  1    authorized by, I guess, the Attorney General or someone in the

00:11  2    Executive Office. But the Veterans Administration and other

00:12  3    agencies only to the extent that they allow for same are

00:12  4    provided with this other forum of redress in that kind of a

00:12  5    context. As it relates to the Department of Veterans Affairs

00:12  6    the procedure would have been for plaintiff to file, as he did,

00:12  7    with the agency and then --

00:12  8          THE COURT:  So the EEOC procedures apply not the

00:12  9    merits --

00:12  10         MS. WHERRY: That's correct. As to the allegations of

00:12  11   the plaintiff's race that's correct.

00:12  12         THE COURT:  Okay, good. That gives me some information

00:12  13   on that. You have created a real problem, doctor.  This case is

00:12  14   scheduled for trial in two weeks and there's no claim for

00:12  15   discrimination.

00:12  16         DR. QIAN:  The claim for discrimination was filed with

00:12  17   the following documentation after the complaint. Especially

00:12  18   after the discovery process. Now we have the evidence for the

00:13  19   claim of the discrimination, which is pretty solid evidence I

00:13  20   believe.  There were three other Caucasian physicians --

00:13  21         THE COURT:  You filed an EEOC claim.

00:13  22         DR. QIAN:  That's correct.

00:13  23         THE COURT:  Does that claim state you were

00:13  24   discriminated against because of national origin?

00:13  25         DR. QIAN:  That's correct.

00:13  1        THE COURT:  If you knew that at that time -- I am

00:13  2    assuming you did that in good faith and you had a good faith

00:13  3    basis for making those allegations with the EEOC. I am told

00:13  4    there was some discovery in that proceeding.

00:13  5        DR. QIAN:  That discovery proceeding was totally

00:13  6    messed up by my attorney --

00:13  7        THE COURT:  But there was a chance to make allegations

00:13  8    to get evidence to support the allegations in the EEOC.

00:13  9        DR. QIAN:  That's correct.

00:13 10        THE COURT:  There was a hearing and the hearing

00:13 11    officer ruled against you.

00:13 12        DR. QIAN:  There was not a hearing. We withdrew the

00:14 13    hearing request from the EEOC.

00:14 14        THE COURT:  You appealed from something so I assume

00:14 15    some determination was made based on a record.

00:14 16        DR. QIAN:  We appealed but after that we did not have

00:14 17    solid evidence for a discrimination claim back then.

00:14 18        THE COURT:  I thought you took an appeal?

00:14 19        DR. QIAN:  I withdrew it before the appeal happened in

00:14 20    the EEOC Court, Your Honor.

00:14 21        THE COURT:  Here's the problem.  You cannot file a

00:14 22    lawsuit, not raise a claim and then two weeks before trial say

00:14 23    we were waiting for the evidence to make the claim, we are now

00:14 24    asserting that claim.  It just can't work that way.

00:14 25        MR. QIAN:  Your Honor, we didn't have the solid

00:14 1    evidence.  I knew as fact there were other Caucasian physicians

00:14 2    that were treated differently.

00:14 3        THE COURT:  Your claim is not that you were fired

00:15 4    because of your national origin but because you were denied due

00:15 5    process because of your national origin.

00:15 6        DR. QIAN:  The due process should be applied to all

00:15 7    the physicians equally. Unfortunately in this case the

00:15 8    plaintiff was treated totally different compared to the

00:15 9    Caucasian physicians, Your Honor.

00:15 10       THE COURT:  Let me hear from the VA.  What is it you

00:15 11   think I should do in this case?

00:15 12       MS. WHERRY:  Your Honor, I have in front of me the

00:15 13   final agency decision, which is what was rendered on

00:15 14   January 29th, 2009.  Right on the front page it reports and

00:15 15   states clearly the claim and it reads as follows:

00:15 16       Whether the claimant was subjected to disparate

00:15 17   treatment and discriminated against on the basis of national

00:15 18   origin (Chinese) when, A, on September 14th, 07 his medical

00:16 19   privileges were revoked.

00:16 20       And, B, when on September 28th, 2007, he was

00:16 21   terminated from his accepted appointment at the Miami VA Health

00:16 22   Care System.

00:16 23       In this 21 page opinion the agency made findings that

00:16 24   he was not discriminated against and he got his due process. He

00:16 25   then took an appeal -- he withdrew his hearing as reflected in

00:16  1    the agency decision.  It says, and I quote, the complainant

00:16  2    initially requested a hearing before an EEOC Administrative

00:16  3    Judge but subsequently withdrew the request.  After the

00:16  4    decision was entered against him by the agency the plaintiff

00:16  5    took an appeal to the EEOC, which decision was rendered on

00:16  6    August 26th, '09 and that decision was also unfavorable to the

00:16  7    plaintiff.

00:16  8            THE COURT:  Was it on the merits?

00:16  9            MS. WHERRY:  Yes.  They addressed it on the claim of

00:17  10   employment discrimination. Finding no discrimination the EEOC

00:17  11   found against him -- the plaintiff.   The plaintiff was

00:17  12   represented by counsel throughout the entire pendency of the

00:17  13   administrative proceedings.

00:17  14           The plaintiff is a very well educated individual being

00:17  15   double board certified.  He elected to proceed into District

00:17  16   Court on his own. He had the benefit of what his attorney had

00:17  17   filed within the EEOC.

00:17  18           He had the benefit and opportunity of having seen

00:17  19   exactly how the agency and his counsel had properly framed the

00:17  20   case by alleging disparate discrimination on the basis of

00:17  21   national origin.

00:17  22           He elected to file the complaint in Federal District

00:17  23   Court timely as noted by the author of the appeal --

00:18  24           THE COURT:  Let me stop you there. There is a little

00:18  25   bit of a dichotomy -- and I am not sure dichotomy is the right

00:18  1    word.   Your position is there is no allegation of

00:18  2    discrimination based on disparate treatment based on national

00:18  3    origin.

00:18  4            MS. WHERRY:   In the case before Your Honor that is

00:18  5    correct.

00:18  6            THE COURT:   So, if you are correct there has been no

00:18  7    timely filing resulting from the EEOC letter --

00:18  8            MS. WHERRY: That's correct.   He could have filed the

00:18  9    instant litigation notwithstanding --

00:18  10           THE COURT:   Let me stop you.   So your position is it's

00:18  11   a separate suit?

00:18  12           MS. WHERRY:   That's correct.

00:18  13           THE COURT:   I tend to agree based on the allegations

00:18  14   in the suit.   I don't know what the intentions were but

00:18  15   objectively it's pretty clear that there is no discrimination

00:18  16   case alleged.

00:18  17           MS. WHERRY: May I add one more thing?

00:18  18           THE COURT:   No.   I will allow you to respond in a

00:19  19   second. I have certain options. That is why I was asking what

00:19  20   do you think I should do.  In some instances I could say it's

00:19  21   not alleged but I could give plaintiff leave to amend to allege

00:19  22   that cause of action so that everyone knows, including the

00:19  23   Court, that there is a claim for discrimination based on

00:19  24   national origin. And if I did that there would be two results.

00:19  25   One, the case would have to come off the trial calendar.   But

00:19  1    more importantly, the time for filing the claim would have long

00:19  2    passed. It would have been sometime I think in December.

00:19  3            So that creates a serious problem for you, Doctor. Let

00:19  4    me go back to Ms. Wherry. I cut you off because I wanted to let

00:19  5    you know what my thinking was. Because you keep saying it's

00:19  6    timely filed.  But it's only timely filed if it is a claim for

00:20  7    the same discrimination that was the subject of the EEOC

00:20  8    proceedings.

00:20  9            MS. WHERRY: That's correct.

00:20  10           THE COURT:  Your position is it is not therefore your

00:20  11   position that it's timely based on the suit letter --

00:20  12           MS. WHERRY:  There is an asterisk --

00:20  13           THE COURT:  You see the inconsistency?

00:20  14           MS. WHERRY: You are absolutely right.  It would only

00:20  15   be timely were it to have been patterned after the allegations

00:20  16   that were brought up in the EEO claim, and they do not.

00:20  17           I was going to add that when I deposed the

00:20  18   plaintiff -- because we had not prior to the deposition on

00:20  19   June 17th, 2010 had any meaningful conversation about his case.

00:20  20   So we set him down for deposition.

00:20  21           I was mindful of the allegations that he had raised

00:20  22   with the EEOC during the administrative proceedings. I was also

00:20  23   mindful of the claims he presented in his complaint, which did

00:20  24   not mirror in any way, shape or form that which was raised in

00:20  25   the administrative claim.

So during the deposition I inquired of him, what is it about Title Seven that you are proceeding on?  Do you have any evidence regarding --  I am not reading from the deposition right now.  But essentially race, creed, religion or national origin upon which you believe this occurred at the VA in making these decisions.

And his response was essentially, no, I have no smoking gun. I then said, is it my understanding you are proceeding on a procedural violation only?  And his answer was yes.

THE COURT:  Do you have a copy of the transcript?

MS. WHERRY: Yes. May I approach?

THE COURT:  Yes.

MS. WHERRY:  I also had referenced those pertinent pages in our motion for summary judgment as our first exhibit I believe.

THE COURT:  Have you dog eared the place?

MS. WHERRY: Yes, I have.

THE COURT:  Have you checked this out, Ms. Wherry, what is covered by -- let me see how it is phrased here in the complaint.  42 U.S.C 2000e, et sec, what that covers?  It's a pretty broad area.

MS. WHERRY: It's as wide as my arms can --

THE COURT:  I know, but what does it cover other than discrimination based on national origin, age, race, sex things

00:22  1   like that?

00:22  2          MS. WHERRY:  In total, I don't know all of the details

00:22  3   as far as the entire complement of the statute.  We refer to it

00:22  4   collectively as Title 7 as pertains to employment violations

00:22  5   of --

00:22  6          THE COURT:  Does it include denial of due process or

00:22  7   equal protection?

00:22  8          MS. WHERRY:  No, it does not. When I read the

00:22  9   complaint and read Title 7, and I have handled some Title 7

00:22  10  cases myself, there was a great disparity between that which

00:22  11  was alleged in the complaint and that which was alleged in the

00:22  12  EEO administrative proceeding.

00:22  13         And during the deposition I wanted to go into some of

00:23  14  the details about why the nine allegations that the VA

00:23  15  challenged his clinical practice were at issue and were

00:23  16  incorrect, saying that he is a good doctor and he did not

00:23  17  violate these one through nine allegations.

00:23  18         There was no discussion about the basis upon which his

00:23  19  complaint was premised on discrimination. He had already told

00:23  20  me that was not at issue. He had already indicated that is not

00:23  21  what his complaint was about --

00:23  22         THE COURT:  Let me stop you.  Dr. Qian, do you have a

00:23  23  copy of your deposition?

00:23  24         DR. QIAN:  No, I do not have it,  Your Honor, based

00:23  25  on --

00:23  1          THE COURT:  All right.  Let me just take a look at it

00:27  2     a moment.  I do note, you ask if he had any evidence of

00:27  3     discrimination.  Why would you ask if there was evidence of

00:27  4     discrimination if that claim was not pled?

00:27  5          MS. WHERRY:  It could have been my -- usually when I

00:27  6     take a deposition I am asking for more things than what is in

00:27  7     the strict confines of the case.

00:27  8          Since he had alleged discrimination in his EEO case

00:27  9     and the Administrative Court had found no evidence of

00:27  10    discrimination I wanted to know from Dr. Qian if he had any

00:27  11    evidence of discrimination.  I was trying to ferret out, as he

00:27  12    was proceeding pro se, what his intentions were.

00:27  13         He made clear his intentions were to proceed with a

00:27  14    due process claim only.  It seemed clear he had abandoned his

00:27  15    claim for a Title Seven on the basis of national origin and so

00:28  16    on.  He admitted he had no evidence of such a claim.

00:28  17         That was consistent with any statement that he

00:28  18    intended to proceed only with due process.  So, it was right

00:28  19    and sound in its presentation for him to say I am only

00:28  20    proceeding on due process because I only have evidence of due

00:28  21    process.

00:28  22         I do not have any evidence of employment

00:28  23    discrimination on the basis of national origin.  So therefore

00:28  24    it is reasonable to expect that consistent with his complaint

00:28  25    and his statements to me that he was proceeding only on due

00:28  1   process were, in fact, as he intended because he had no

00:28  2   evidence to support any kind of a Title Seven violation anyway.

00:28  3          THE COURT:  Doctor, you put me in an kind of an

00:28  4   awkward position. I don't see a claim for discrimination in

00:28  5   your complaint. It's pretty clear there isn't one. I have gone

00:28  6   through the complaint a number of times looking for it.

00:28  7          But it may not be all that important to you in a way

00:29  8   because you still have your claim for lack of due process that

00:29  9   you claim you are entitled to, right?

00:29  10         MR. QIAN::  That's correct.

00:29  11         THE COURT:  If you can prove you were entitled to it

00:29  12  and denied it you win on that point and you will get your due

00:29  13  process. Which means you will go through whatever the system is

00:29  14  that provides for the due process.

00:29  15         So, the mere fact you may not have a claim because

00:29  16  they denied you due process for a discriminatory reason is

00:29  17  somewhat irrelevant.  Because if you are entitled to it you

00:29  18  will get it.  If you are not entitled to it you will not get

00:29  19  it.

00:29  20         DR. QIAN:  Your Honor, these two claims are connected.

00:29  21  Without the due process -- that's the basis for the

00:29  22  discrimination complaint. The statement a moment ago was not

00:30  23  true for the reason of -- we had a deposition June 17th of

00:30  24  2010. And three days before that I sent the discovery to the

00:30  25  defendant.

00:30  1          I asked clearly about the other Caucasian physicians,

00:30  2  how they were treated, were they were afforded due process.

00:30  3  That's clear evidence that the plaintiff has a clear indication

00:30  4  to pursue the discrimination claim.

00:30  5          THE COURT:  But it's not in the complaint. Maybe you

00:30  6  intended for it to be, I don't know. Maybe you changed your

00:30  7  mind after you got involved in the case. But you were on notice

00:31  8  because of the potential claim against the VA because of the

00:31  9  alleged discrimination. Because that was the nature of your

00:31  10  EEOC claim. There's no question about that.

00:31  11          DR. QIAN:  The EEOC claim was granted for the summary

00:31  12  judgment --

00:31  13          THE COURT: I understand. What you were complaining

00:31  14  about in the EEOC case is you were discriminated against

00:31  15  because of your national origin, being Chinese.

00:31  16          DR. QIAN:  That's correct.

00:31  17          THE COURT:  So you were on notice that was the nature

00:31  18  of the claim. If that were the claim you should have said that

00:31  19  in your complaint. The only thing you say in your complaint is

00:31  20  you were denied your rights under due process as a VA employee.

00:31  21          DR. QIAN:  That's correct.

00:31  22          THE COURT:  That's just not sufficient. Here we are

00:31  23  two weeks before trial.  So the case is going to go forward

00:31  24  only on the due process claim, not the discrimination claim.

00:31  25  I could give you leave to amend but that would be a futile act

by me because if I allowed you to add a discrimination claim at

this point it would be time barred, which means it is too late,

after the 90 days. So it is an unfortunate situation, but I am

not sure that will be all that important at the end of the day

because you still have the basic claim that you have always

asserted, in this case at least, that you were denied due

process.

Because you have that right pursuant to the statutes,

rules and regulations that are promulgated that cover the VA's

procedures.  So if you were denied those rights you will get

the relief you are seeking, which would be the same relief if

you proved a discrimination case.

DR. QIAN:  But the reason behind it is the

discrimination and the --

THE COURT:  But if you are entitled to due process and

did not get it you will get it, you will win your case. If you

are not entitled to it you should not have gotten it anyway.

DR. QIAN:  That's correct.

THE COURT:  So even though I am denying -- I am not

denying it, I am just ruling it is not in the complaint. Even

though you cannot proceed on that claim at the end of the day

the results will be the same.

Either you are going to get due process because you

are entitled to it in the first instance or you are not going

to get it because you were not entitled to due process in the

1   first instance.

2          DR. QIAN:  The end result will be totally different

3   Your Honor --

4          THE COURT:  No, it's not.

5          DR. QIAN:  If someone conducted a discriminatory

6   act --

7          THE COURT:  I am tired of arguing about it.  You

8   should have a lawyer.  You are apparently not understanding.

9          What is your expertise by the way?

10          DR. QIAN:  Spinal cord injury.

11          THE COURT:  All right. If I had a spinal cord injury I

12   would go to someone like you, I would not go to an Assistant

13   U.S. Attorney to perform surgery on me.

14          A lawyer would have told you that you have to repeat

15   the allegations in the EEOC. You are limited to the claims that

16   you made in the EEOC when you file your Federal case. You are

17   limited to those.

18          You can't file an EEOC claim and say I was

19   discriminated against because of my age and then file a suit

20   subsequent to that within 90 days and say I was discriminated

21   against because of national origin or anything of that nature.

22          DR. QIAN:  The reason I do not have an attorney is

23   because the attorney screwed up my case in the EEOC Court.

24          THE COURT:  That may or may not be the case, I don't

25   know -

00:34  1        DR. QIAN:  I have an order from the EEOC Court --

00:35  2        THE COURT:  If you had a problem with the lawyer then

00:35  3  your problem is against the lawyer.  Again, just like my

00:35  4  analogy with a doctor. If I am not satisfied with the opinion

00:35  5  from the first doctor then there's such a thing as a second

00:35  6  opinion.

00:35  7        DR. QIAN:  That's correct.

00:35  8        THE COURT:  Patients do it all the time.  I am

00:35  9  repeating myself.  It's clearly not in the complaint. You can

00:35  10  proceed on the due process claim.

00:35  11        We're still dealing with the summary judgment.  It's

00:35  12  been like pulling teeth to get all the information we need.

00:35  13  Apparently we now have it. We will look at the motion for

00:35  14  summary judgment. If it's denied we're going to trial. If it's

00:35  15  granted there will be no trial.

00:35  16        DR. QIAN:  In terms of the discrimination case,

00:35  17  although I put in the cover sheet of the claim -- I put in the

00:35  18  claim, the first sentence of the claim itself, it does not

00:36  19  count?  Although I am not an attorney, I think when you put the

00:36  20  law in front it's interpreted as -- I have every single

00:36  21  intention consistently to pursue this claim.

00:36  22        THE COURT:  Well then you should have said what you

00:36  23  said in the EEOC claim, I was denied due process because I was

00:36  24  discriminated against because of national origin. I am Chinese.

00:36  25  Other people were treated differently --

23

00:36  1        DR. QIAN:  Unfortunately the attorney missed the

00:36  2  deadline, Your Honor.

00:36  3        THE COURT:  Here's the problem. We have a trial date

00:36  4  coming up fairly soon. The pretrial stipulation has not been

00:36  5  prepared. This apparently led to the controversy we are having

00:36  6  now.

00:36  7        DR. QIAN:  I prepared my part.  The defendant has had

00:36  8  this behavior, not complying with the Court's orders. They are

00:37  9  still dragging their legs --

00:37  10        THE COURT:  Well you could not have finalized it until

00:37  11  I just made my ruling. Because you are looking at one kind of a

00:37  12  trial, defendant is looking at a totally different type of

00:37  13  trial. So there's no way you could do a pretrial stipulation

00:37  14  other than saying, we disagree with what the issues are.

00:37  15        We now have the issues limited to what you have

00:37  16  alleged in the complaint, which is you were denied due process.

00:37  17        I spent a lot of time on this case weeks ago, as did

00:37  18  my law clerk.  There was nothing to suggest there was any

00:37  19  discrimination case. So that's done, that's finished. So we now

00:37  20  have a due process claim.

00:37  21        Now that we have everything in that we need we will

00:37  22  start looking at the motion for summary judgment. I think in

00:38  23  light of that it's better to postpone the trial for a short

00:38  24  period of time to give us, first of all, the opportunity to

00:38  25  rule on the motion for summary judgment.

00:38  1        If the motion is granted there will be no trial. You

00:38  2   will not have to go through the time and expense of subpoenaing

00:38  3   witnesses, etcetera.  If the motion is denied we will go

00:38  4   forward with the trial.  We will have the pretrial stipulation,

00:38  5   jury instructions, you can subpoena the witnesses you wish to

00:38  6   subpoena, and we will go to trial.

00:38  7        But I think we need to step back and give everyone a

00:38  8   little bit of breathing room so the Court can look at the

00:38  9   motion for summary judgment.  That way the parties know where

00:38 10   they stand. I think we can do it within four to six weeks.

00:38 11        That will give us enough time to rule on the motion

00:38 12   and hopefully give you enough time to prepare for trial if

00:38 13   there is a trial.

00:39 14        DR. QIAN:  The reason the trial is so delayed is

00:39 15   partially because the defendant just keep -- is not following

00:39 16   the Court's orders.

00:39 17        THE COURT:  That may be the case.

00:39 18        DR. QIAN:  In terms of the discovery process.

00:39 19        THE COURT:  That may be the case. It's never been

00:39 20   postponed before, has it?

00:39 21        MS. WHERRY:  No.

00:39 22        THE COURT:  It's only being postponed now because

00:39 23   there was a difference of opinion with regard to what the

00:39 24   issues were. That has now been resolved. We are now two weeks

00:39 25   from trial and I have to be able to rule on the motion for

00:39  1    summary judgment before we go to trial. I will do it promptly.

00:39  2    I will do the best job I can. But the parties need to know what

00:39  3    the ruling will be. If I grant the motion you don't have to

00:39  4    worry about spending any more time and money, you can take an

00:39  5    appeal.

00:40  6            So, I will postpone it four to six weeks. Assuming we

00:40  7    rule within the next ten days that will give you another two or

00:40  8    three weeks to prepare the pretrial stipulation, prepare the

00:40  9    jury instructions, get the witnesses lined up and prepare for

00:40  10   trial.

00:40  11           Any thoughts about when the case should be reset?

00:40  12           MS. WHERRY:  Your Honor, I have plans around the

00:40  13   nineteenth of November.

00:40  14           THE COURT:  What do you mean by plans?

00:40  15           MS. WHERRY: I have personal plans to be on leave.

00:40  16           THE COURT:  You are taking a vacation?

00:40  17           MS. WHERRY: Yes.

00:40  18           THE COURT:  November 19th through what date?

00:40  19           MS. WHERRY:  I apologize.  It would be the 17th

00:41  20   through -- I think that would be the day after Thanksgiving.

00:41  21           THE COURT:  We wouldn't try it that week because

00:41  22   that's Thanksgiving. So we would have to try it the week of the

00:41  23   eighth or the first week in December.

00:41  24           MS. WHERRY:  Can we kick it over to the first week in

00:41  25   December?  If the Court is looking for a definitive date --

00:41  1        THE COURT:  I will not set it down quite yet, but it

00:41  2    will be either the week of November the 8th or the first week

00:42  3    in December. I will give you plenty of notice. It depends

00:42  4    somewhat on my calendar.  The mere fact it is set down for that

00:42  5    period does not mean it will go. Because the criminal cases

00:42  6    will go first. I will keep in mind that you are on vacation

00:42  7    that period of time.

00:42  8        All right.  Anything else?

00:42  9        DR. QIAN:  Regarding the postponing of the trial date,

00:43  10   if Your Honor could keep in mind the plaintiff is a physician

00:43  11   in private practice --

00:43  12       THE COURT:  I will work with you as best I can.  But

00:43  13   keep in mind, you are getting a trial quicker than any litigant

00:43  14   in the State of Florida. This case typically would be two years

00:43  15   before it gets to trial. I can't accommodate everyone for

00:43  16   everything. I suggest you should probably go out and get a

00:43  17   lawyer that could help you --

00:43  18       DR. QIAN:  I would love to, but from my experience

00:43  19   attorneys already screwed up my case.

00:43  20       THE COURT:  That's your choice. If this case goes to

00:43  21   trial you will be at a big disadvantage in terms of trying the

00:43  22   case in front of a jury.

00:43  23       DR. QIAN:  Regarding the jury trial, there was a clerk

00:43  24   mistake saying there was no demand. Apparently there was a

00:43  25   demand for jury trial --

| | | |
|--|--|--|
| 00:44 | 1 | THE COURT:  So, we will have a jury trial.  Well, is |
| 00:44 | 2 | the plaintiff entitled to a jury trial when he sues the VA? |
| 00:44 | 3 | MS. WHERRY:  Your honor, he is not entitled to a jury |
| 00:44 | 4 | trial were it to be an FTCA.  Federal Tort Claims Act Case. I |
| 00:44 | 5 | think in the early nineties, sometime in there, they amended |
| 00:44 | 6 | the statute to include a jury trial even as to the United |
| 00:44 | 7 | States. |
| 00:44 | 8 | So were this to be a Title 7 case it would be.  As to |
| 00:44 | 9 | just purely a question of whether he has a Constitutional right |
| 00:44 | 10 | I think generally speaking people that make allegations of a |
| 00:44 | 11 | denial of Constitutional rights are -- |
| 00:44 | 12 | THE COURT:  Why don't you take a look at that then. |
| 00:44 | 13 | Because if there is a demand for jury trial and he is entitled |
| 00:44 | 14 | to a jury trial he will get a jury trial. |
| 00:44 | 15 | Because typically when you sue the Government or a |
| 00:44 | 16 | Government agency you are not entitled to a jury trial.  So why |
| | 17 | don't you take a look at it.  If you are entitled to a jury |
| | 18 | trial you will get a jury trial. |
| | 19 | All right.  Thank you all. |
| | 20 | HEARING CONCLUDED |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

- - -

## C E R T I F I C A T E

     I hereby certify that the foregoing is an accurate transcription of proceedings in the above-entitled matter.


                              /S/PATRICIA SANDERS

_____                        _____

DATE FILED                       PATRICIA SANDERS, RPR